BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller *(pro hac vice)*
jschiller@bsfllp.com
575 Lexington Ave., 7th Floor
New York, NY 10022
Telephone:  212.446.2300
Facsimile:   212.446.2350

Fred Norton (SBN 224725)
fnorton@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA 94612
Telephone:  510.874.1000
Facsimile:   510.874.1460

David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401
Telephone:  310.395.5800
Facsimile:   510.874.1460

Attorneys for Defendants *The Goldman Sachs Group, Inc.*, *Alliance Films Inc. and Momentum Pictures USA, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL SILVER, an individual, SILVER PICTURES, INC., and SILVER SLATE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP, INC., ALLIANCE FILMS INC., and MOMENTUM PICTURES USA, INC.,<br><br>Defendants. | Case No.  CV 10-4961 CAS (AJWx)<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(6)<br><br>Date:        September 13, 2010<br>Time:        10:00 a.m. |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ...................................................................... vii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

    Preliminary Statement ................................................................................ 1

    Statement of Facts ...................................................................................... 3

    Argument ...................................................................................................... 8

    I.    The Claims for Breach of Oral Agreements Should Be Dismissed Because They Are Both Implausible and Contradicted by the Terms of the Written Agreement (Counts 1 and 2) ................................................................ 8

        A.    The Oral Contract Claims Are Implausible .................. 10

        B.    The Alleged Silver Deal, Performance Agreement and Forbearance Agreement Are Unenforceable .......... 12

        C.    Oral Contract Claims Against Alliance Are Barred By the Parol Evidence Rule ........................................... 14

        D.    The Oral Contract Claims Against Goldman Fail In Light of the Undisputed Terms of the Written Agreement ........................................................................ 15

    II.    The Claims for Breach of Oral Agreements Fail for Additional Reasons as Well (Counts 2 and 3) ......................... 17

        A.    Claims for Breach of the "Silver Deal" and the "Performance Agreement" Against Goldman and Alliance Are Time-Barred .............................................. 17

        B.    The "Fee Agreement" Is Not a Binding Contract .......... 17

    III.    The Claims for Breach of a Written Agreement Fail (Count 1) ................................................................................ 18

        A.    Goldman Is Not a Party to the Written Agreement ........ 19

        B.    Plaintiffs Do Not Allege That Momentum Breached Any Contract .................................................... 19

        C.    The Complaint Fails to Plead a Breach of the Written Agreement By Alliance .................................... 20

    IV.    The Claim for Unjust Enrichment Fails (Count 4) .................. 21

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

NOTICE OF MOTION AND
MOTION TO DISMISS

1

V.    The Claim for Fraud Fails (Count 5) ........................................ 22

        A.    The Complaint Fails to Plead Fraud by Goldman or
              Alliance ................................................................. 22

        B.    The Complaint Fails to Plead Promissory Fraud by
              Goldman or Alliance ....................................... 23

Conclusion ....................................................................................... 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

NOTICE OF MOTION AND
MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

*American Surgical Assistants, Inc. v. United Healthcare of Texas, Inc.*,
    No. 09-CV-0774, 2010 WL 1340557 (S.D. Tex. Mar. 30, 2010) .................... 21

*Amore ex rel. Estates of Amore v. Accor*,
    529 F. Supp. 2d 85 (D.D.C. 2008) ....................................................... 9

*Ashcroft v. Iqbal*,
    ___ U.S. ___, 129 S. Ct. 1937 (2009) ........................................... passim

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
    Carpenters*,
    459 U.S. 519 (1983) ......................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. passim

*Brown v. Cal. State Lottery Comm'n*,
    232 Cal. App. 3d 1335 (1991) .......................................................... 19

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) ..................................................... 13, 14

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*,
    171 Cal. App. 4th 1 (2009) ............................................................. 22

*Conder v. Home Sav. of Am.*,
    680 F. Supp. 2d 1168 (C.D. Cal. 2010) ............................................. 12

*Cruey v. Gannett Co.*,
    64 Cal. App. 4th 356 (1998) ..................................................... 14, 16

*Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC*,
    No. 10-CV-00188, 2010 WL 1929566 (N.D. Cal. May 12, 2010) .................. 21

*Heller v. Pillsbury, Madison & Sutro*,
    50 Cal. App. 4th 1367 (1996) .......................................................... 19

*Helmer v. Bingham Toyota Isuzu*,
    129 Cal. App. 4th 1121 (2005) ........................................................ 23

*Holmes v. Lerner*,
    74 Cal. App. 4th 442 (1999) ........................................................... 18

*In re Ankeny*,
    184 B.R. 64 (B.A.P. 9th Cir. 1995) ................................................... 14

*Iverson, Yoakum, Papiano & Hatch v. Berwald*,
    76 Cal. App. 4th 990 (1999) ........................................................... 22

*Jogani v. Superior Court*,
    165 Cal. App. 4th 901 (2008) .......................................................... 21

*Johnson v. Hoeownership Pres. Found.*,
    No. 09-CV-600, 2009 WL 6067018 (D. Minn. Dec. 18, 2009) ..................... 20

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ......................................................... 10

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

NOTICE OF MOTION AND
MOTION TO DISMISS

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...................................................................... 4

*Kroff v. Larson*,
   167 Cal. App. 3d 857 (1985) ..................................................................... 22

*Ladas v. California State Auto Association*,
   19 Cal. App. 4th 761 (1993) ............................................................... 12, 13

*Lazar v. Superior Court*,
   12 Cal. 4th 631 (1996) ............................................................................. 23

*Marques v. Mortgageit, Inc.*,
   No. 09-CV-1154, 2009 WL 4980269 (C.D. Cal. Dec. 14, 2009) ..................... 19

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, Inc.*,
   No. 07-CV-912, 2007 WL 2206946 (S.D. Cal. Jul. 27, 2007) ................... 22, 23

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) ................................................................... 21

*Metoyer v. Chassman*,
   504 F.3d 919 (9th Cir. 2007) .................................................................... 14

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) .................................................................... 23

*Nikoonahad v. Rudolph Techs., Inc.*,
   No. 08-CV-2290, 2008 WL 4065831 (N.D. Cal. Aug. 27, 2008).................... 23

*Parker v. Walker*,
   5 Cal. App. 4th 1173 (1992) ..................................................................... 17

*Passante v. McWilliam*,
   53 Cal. App. 4th 1240 (1997) ................................................................... 18

*Peterson Develop. Co. v. Torrey Pines Bank*,
   233 Cal. App. 3d 103 (1991) .................................................................... 12

*Phillips v. "MERS" Mortgage Elec. Registration Sys.*,
   No. 09-CV-01028, 2009 WL 3233865 (E.D. Cal. Oct. 2, 2009) ..................... 20

*Premiere Innovations, Inc. v. IWAS Indus., Inc.*,
   No. 07-CV-1083, 2007 WL 2873442 (S.D. Cal. Sep. 28, 2007) ..................... 23

*Reichert v. Gen. Ins. Co. of America*,
   68 Cal. 2d 822 (1968) .............................................................................. 19

*Simmons v. Cal. Inst. of Tech.*,
   34 Cal. 2d 264 (1949) .............................................................................. 18

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001). ............................................................... 9, 10

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) .................................................................. 10

*Sullivan v. Mass. Mut. Ins. Co.*,
   611 F.2d 261 (9th Cir. 1979) .................................................................... 14

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................... 23

*Textron Fin. Corp. v. Turbine Airfoil Designs, Inc.*,
   No. 09-CV-01714, 2010 WL 2265649 (M.D. Pa. June 4, 2010)..................... 21

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

NOTICE OF MOTION AND
MOTION TO DISMISS

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................... 22

*Wagner v. Glendale Adventist Med. Ctr.*,
  216 Cal. App. 3d 1379 (1989) ................................................... 14

*Wiz Tech., Inc. v. Coopers & Lybrand*,
  106 Cal. App. 4th 1 (2003) ........................................................ 17

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ............................................. 10, 15

## STATUTES

Cal. Civ. Proc. Code § 339 ............................................................ 17, 22

Cal. Civ. Code § 1625 .................................................................... 14, 16

Cal. Civ. Proc. Code § 1856(a) ..................................................... 14, 16

## RULES

Federal Rules of Civil Procedure
  Rule 8 ...................................................................................... vii, 9, 10
  Rule 9(b) .......................................................................... viii, 3, 22, 23
  Rule 12(b)(6) .......................................................................... vii, 3, 9

## OTHER AUTHORITIES

1 Williston on Contracts § 4:1 (4th ed. 2010) ................................... 12

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1

## NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE** that on September 13, 2010 at 10:00 a.m. in

3 Courtroom 5 of this Court, located at 312 North Spring Street, Los Angeles,

4 California 90012, Defendants The Goldman Sachs Group, Inc. ("Goldman"),

5 Alliance Films Inc. ("Alliance") and Momentum Pictures USA, Inc. ("Momentum")

6 will and hereby do move the Court for an order dismissing the plaintiffs' complaint.

7      This motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil

8 Procedure on the following grounds:

9      1.  The claims for breach of oral contract fail because they are (a)

10         implausible, (b) fail to allege the existence of any oral contract with

11         definite and certain terms, and (c) are contradicted by the terms of an

12         express, integrated written agreement.

13     2.  The alleged breaches of the purported oral Silver Deal and purported oral

14         Performance Agreement are time-barred.

15     3.  The purported oral "Fee Agreement" is not a contract, but an

16         unenforceable gratuitous promise.

17     4.  The claim for breach of the Written Agreement against Goldman fails

18         because Goldman was not a party to that agreement and plaintiffs do not

19         allege that Goldman breached any term of it.

20     5.  The claim for breach of the Written Agreement against Momentum fails

21         because plaintiffs do not allege that Momentum breached that agreement.

22     6.  The claim for breach of the Written Agreement against Alliance fails to

23         satisfy Rule 8 of the Federal Rules of Civil Procedure because it is

24         nothing more than a conclusory and formulaic recitation of the elements

25         of a cause of action.

26     7.  Under California law, there is no cause of action for unjust enrichment;

27         even if the claim were construed as one for quantum meruit, it would be

28         time-barred.

NOTICE OF MOTION AND
MOTION TO DISMISS

8. The fraud claim fails because (a) it does not satisfy Federal Rule of Civil Procedure 9(b), and (b) plaintiffs' bare allegation that defendant simply had no intention to be bound by the terms of the parties' agreement is, as a matter of settled law, insufficient to state a claim.

The Motion will be based upon this Notice, the Memorandum of Points and Authorities in Support of the Motion, the Declarations of Charles Layton and Fred Norton in Support of the Motion, all other pleadings and papers filed in this action, and such further evidence and argument as may be presented at the hearing of this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 28, 2010.  Prior to that conference, the parties and their counsel had extensive discussions regarding this matter.  Plaintiffs thus have agreed that Defendants may file this motion less than five days after the most recent conference of counsel.

DATED:  July 30, 2010              BOIES, SCHILLER & FLEXNER LLP

By /s/
    Fred Norton

Attorneys for Defendants The Goldman Sachs Group, Inc., Alliance Films Inc. and Momentum Pictures USA, Inc.

NOTICE OF MOTION AND
MOTION TO DISMISS

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants The Goldman Sachs Group, Inc. ("Goldman"), Alliance Films Inc. ("Alliance"), and Momentum Pictures USA, Inc. ("Momentum") respectfully submit this memorandum of points and authorities in support of their motion to dismiss plaintiffs' Complaint.

## Preliminary Statement

On April 18, 2008, the Silver Parties[1] and defendants Alliance and Momentum, all sophisticated players in the entertainment industry represented by counsel, entered into an exhaustively detailed series of integrated written agreements (together, the "Written Agreement"), totaling 125 pages.  Through the Written Agreement – the existence of which plaintiffs admit, but the actual terms of which they ignore – the Silver Parties agreed to assign to Momentum their rights in various television and movie projects, in exchange for $30 million from Momentum.  That Written Agreement was expressly contingent on Alliance, through the exercise of commercially reasonable efforts, obtaining financing within 90 days; if financing could not be obtained within that timeframe, then the agreement terminated automatically.  During the next 90 days, as the financial crisis deepened and the economy careened toward its near collapse, Alliance was unable to obtain financing.  The Written Agreement thereby terminated.

Over two years later, unsatisfied with this result, the Silver Parties have concocted the implausible and factually inconsistent claims set forth in the Complaint.  According to the Complaint, the 125-page Written Agreement is merely an afterthought and irrelevancy.  Instead, the plaintiffs say, the parties are governed by a series of overlapping and inconsistent so-called "oral agreements" between the Silver Parties, Alliance, and Goldman[2] that **pre-date** the integrated

---

[1] Capitalized terms not otherwise defined herein will have the meanings attributed to them in the Complaint.

[2] Goldman is a publicly-traded Financial Holding Company that does not directly

NOTICE OF MOTION AND
MOTION TO DISMISS

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    Written Agreement.  According to plaintiffs, Goldman and Alliance (not

2    Momentum) had previously orally committed to purchase these same entertainment

3    assets for $35 million, then to purchase them for $30 million, and then to pay

4    plaintiffs $2 million for a supposed introduction that already occurred, regardless of

5    whether any transaction ever happened.

6          That these sophisticated parties would enter into a series of oral agreements

7    unconditionally requiring payment of millions of dollars and transfer of significant

8    rights to valuable entertainment assets is entirely implausible.  That some of these

9    parties would then enter into a detailed Written Agreement for the transfer of the

10   same assets to a different party without so much as mentioning any of the prior oral

11   agreements is absurd.  The federal courts did not hesitate to dismiss claims based on

12   such implausible and self-contradictory allegations even before the Supreme

13   Court's recent guidance in *Twombly* and *Iqbal*.  Defendants respectfully request that

14   this Court do the same.

15         Given their inherent implausibility, it should not be surprising that plaintiffs'

16   claims are legally deficient for several reasons.  First, as a matter of law, the

17   detailed, integrated Written Agreement supersedes all of the alleged oral

18   agreements claimed by plaintiffs.  As a result, all of the supposed oral agreements

19   are barred by the parol evidence rule.  The oral agreements fail for another reason

20   as well – in contrast to the detailed, specific Written Agreement, the oral

21   agreements alleged in the Complaint are too vague and uncertain to establish an

22   enforceable contract at all.

23         Second, despite the extensive detail of the Written Agreement, Goldman is

24   not a party to that agreement, or even mentioned anywhere in it.  That very absence

25

26   engage in any of the activities alleged in the Complaint.  Contrary to the allegations

27   in the Complaint, affiliates of Goldman, not Goldman itself, have an investment in
     Alliance.  Goldman reserves its rights to seek dismissal on this ground at the

28   appropriate time, should any claim against it survive this motion to dismiss.

NOTICE OF MOTION AND
MOTION TO DISMISS

forecloses plaintiffs' oral and written contract claims against Goldman.  If all contingencies were satisfied, the fully-integrated contract would have required plaintiffs to transfer their entertainment assets to Momentum in exchange for a payment from Momentum, with financing obtained by Alliance.  The Written Agreement did not require Goldman to perform anything, nor did it make any other party's performance contingent upon anything Goldman did or failed to do.

Third, although plaintiffs also claim that the Written Agreement's "commercially reasonable efforts" clause was breached, they allege no **facts** to support that contention.  Plaintiffs' allegation is the very type of conclusory and formulaic recitation of the elements of a cause of action that the Supreme Court has said requires dismissal under Rule 12(b)(6).

Finally, the remainder of the Complaint consists of tacked-on claims that are patently deficient.  Plaintiffs' claim for unjust enrichment is not a claim at all under California law, and in any event is time-barred.  Plaintiffs' claim for fraud – based on nothing more than the conclusory allegation that defendants never intended to perform the alleged contracts – is the sort of claim that courts have repeatedly rejected under Rule 9(b).

The Complaint should be dismissed as to all defendants.

## Statement of Facts

Plaintiffs Joel Silver and the other Silver Parties are sophisticated and experienced producers of motion pictures and television content.  Complaint ("C") ¶¶ 1, 6, 9.  The Complaint asserts that Silver "is a successful and well known producer" whose "features [*sic*] films and television series have grossed billions of dollars at the box office."  *Id.* ¶ 6.  Defendant Alliance is a producer and distributor of television and motion picture products and programming.  *Id.* ¶ 11.  Defendant Goldman is alleged to be an investment bank that invested in Alliance and other film ventures.  *Id.* ¶¶ 7, 8, 11.  Defendant Momentum is alleged to be a corporation controlled by Alliance and/or Goldman.  *Id.* ¶ 3.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

### ***The Written Agreement***

On April 18, 2008, the Silver Parties signed a detailed "Written Agreement" with Alliance and Momentum, which actually consisted of a number of integrated agreements. *Id.* ¶ 18.  The complete "Written Agreement" is attached as Exhibits A – E to the Declaration of Charles Layton.[3]  It consists of the following:

- Letter Agreement (Alliance and Momentum both are parties), Exh. A;
- Assignment Agreement (Alliance and Momentum both are parties), Exh. B;
- Distribution Agreement (Alliance is a party), Exh. C;
- TV First Look Agreement (Alliance is a party), Exh. D; and
- New Studio Deal Agreement (Alliance is a party), Exh. E.

This Written Agreement comprises **125** single-spaced pages of detailed terms, including an express integration clause.  It describes in extensive detail the terms on which plaintiffs Silver Slate and Silver Pictures would assign to Momentum their rights in various television and movie projects.  Specifically, Silver Slate would assign to Momentum a percentage of payments to which it is entitled from profits earned on films produced and distributed under the Dark Castle Motion picture label (the "Slate Net Profits") and Silver Pictures would assign to Momentum its participation in certain gross receipts from those films (the "Silver Participation").  C ¶¶ 9, 18; Layton Decl. Exh. B at p. 1, ¶¶ 1-3.  The Written Agreement states that in exchange Momentum – and only Momentum – would pay the assignors $30 million for those rights, subject to a financing condition.  Layton Decl. Exh. B at p. 1, ¶ 6; *id.* Exh. A at p. 1.

The financing condition in the Written Agreement establishes that Alliance – and only Alliance – would exercise "commercially reasonable efforts" to arrange for funds sufficient to pay the $30 million.  *Id.*. Exh. A at p. 1, ¶ (1); C ¶ 18.  The

---

[3] These documents are expressly referred to and relied upon in the Complaint and are therefore properly considered on a motion to dismiss.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

NOTICE OF MOTION AND
MOTION TO DISMISS

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

1   Written Agreement further provides that if Alliance were unable to obtain that

2   financing within 90 days, the Written Agreement would terminate and be of no

3   further effect.  *Id.*  In all 125 pages of the Written Agreement, nowhere is there any

4   reference to Goldman or any of its affiliates.  Nowhere is there any reference to any

5   finder's fee or similar payment to any of the Silver Parties in connection with the

6   transaction.[4]

7        Plaintiffs admit that Alliance did not obtain financing within 90 days.  C ¶ 20.

8   As plaintiffs themselves indirectly acknowledge, in the summer of 2008, there was

9   a severe liquidity crisis that adversely affected investment across the entire

10  economy, spurring Congress to enact the Troubled Asset Relief Program in the fall.

11  *Id.* ¶ 7.  Because the express contractual condition was not satisfied, the Written

12  Agreement terminated, and Alliance and Momentum had no further obligations to

13  the Silver Parties.  Layton Decl. Exh. A at p. 1,  ¶ (1).  In an effort to avoid those

14  bargained for consequences, plaintiffs contend that Alliance and Goldman

15  prevented the condition from being satisfied.  They assert – solely on information

16  and belief, in a wholly conclusory fashion, without any factual allegations – that

17  Alliance (and Goldman, which was not actually a party to the agreement) did not

18  exercise commercially reasonable efforts to raise financing.  *Id.* ¶ 21.

19

20

21  _____

   [4] These omissions are all the more compelling given the level of detail in the

22  Written Agreement, above and beyond the integration clause itself.  *See*, *e.g.*,

23  Layton Decl. Exh. B at p. 21 (confidentiality clause, integration clause); *id.* pp. 2-7
    (over five pages of defined terms); *id.* pp. 8-11 (detailed terms for allocation of

24  Silver Participation); *id.* pp 11-13 (allocation of purchase price and related tax

25  considerations); *id.* pp. 13-14 (establishing assignee's rights to information); *id.* pp.
    14-15 (key man insurance requirement); *id.* p. 15 ($15 million purchase price

26  adjustment if Silver Parties failed to complete eight films in a specified period); *id.*

27  pp. 15-19 (representations and warranties); *id.* pp. 20-21 (covenants); *id.* p. 23
    (California choice of law clause, waiver of damages clause, limited no assignment

28  clause).

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

### *The Alleged Oral Agreements*

Plaintiffs also allege that prior to and contemporaneous with the Written Agreement, the Silver Parties entered into a series of oral agreements with Goldman and/or Alliance, concerning the same subject matter, in which the parties supposedly agreed to multi-million dollar transactions involving the **identical** entertainment assets owned by the Silver Parties – the Silver Parties' rights to the Slate Net Profits and Silver Participation. *Id.* ¶¶ 10, 12, 17, 19.  Specifically, these oral agreements are alleged as the "Silver Deal," the "Performance Agreement," the "Forbearance Agreement," and the "Fee Agreement." *Id.*

The Silver Deal.  Sometime "[d]uring 2007," Goldman and the Silver Parties supposedly agreed orally on the terms of the Silver Deal.  Plaintiffs describe that purported oral agreement in almost exactly the same terms as they do the Written Agreement.  *Id.* ¶ 10.  As alleged by plaintiffs, that proposed oral contract contemplated that Alliance – not Goldman – would enter into an agreement with the Silver Parties pursuant to which Alliance would pay $35 million for the Slate Net Profits and Silver Participation.  *Id.* ¶¶ 10, 11.  The Silver Parties do **not** allege that the Silver Deal ever closed (*see id.* ¶¶ 11, 12, 15, 17, 19), that the Silver Parties performed their obligations under that purported agreement, or that any defendant breached a specific provision of that purported agreement.  Nevertheless, they assert in conclusory fashion that Alliance and Goldman breached this alleged agreement in late 2007.  *Id.* ¶ 31.

The Performance Agreement.  In the Performance Agreement, Goldman and Alliance allegedly agreed orally, during the summer of 2007, that Alliance would close the Silver Deal (i.e., once again on terms that are virtually identical to the alleged terms of the Written Agreement) if (a) Silver introduced Goldman and Alliance to a potential investor, which allegedly was needed for Goldman to acquire and capitalize Alliance, and (b) that investor in fact financed Goldman's acquisition and capitalization of Alliance.  *Id.* ¶¶ 11-12.  The Complaint appears to allege that

NOTICE OF MOTION AND
MOTION TO DISMISS

1  Alliance breached this agreement in late 2007 by refusing to close the Silver Deal.

2  *Id.* ¶ 15.  However, the Complaint does not describe how Goldman allegedly

3  breached this Agreement because, as the Complaint admits, it was never

4  contemplated that Goldman would perform the Silver Deal.  *Id.* ¶¶ 11, 15.

5      <u>The Forbearance Agreement</u>.  The alleged oral Forbearance Agreement,

6  purportedly agreed to by Alliance, Goldman, and plaintiffs in late 2007, is yet

7  another alleged agreement under which Alliance would supposedly close the Silver

8  Deal if certain conditions were met.  Specifically, the Silver Parties allegedly

9  agreed to delay closing the Silver Deal, pending the arrangement of funds necessary

10  to pay the Silver Parties and agreed to reduce the payment from Alliance under the

11  Silver Deal from $35 million to $30 million.  *Id.* ¶ 17.  Goldman and Alliance

12  allegedly (a) agreed that Alliance and Goldman would make commercially

13  reasonable efforts to obtain the funds necessary for Alliance to make the $30

14  million payment, and (b) agreed for the first time to compensate Silver for allegedly

15  having introduced Goldman and Alliance to an investor, known as SGF, back in the

16  summer of 2007.  *Id.*  Alliance and Goldman allegedly breached this "oral"

17  agreement by failing to use commercially reasonable efforts to obtain that funding

18  and for failing to pay Silver the purported fee.  *Id.* ¶ 33.

19      <u>The Fee Agreement</u>.  "During the same period in early 2008" as when the

20  Written Agreement was drafted and executed, Goldman and Alliance allegedly also

21  agreed orally to pay Silver $2 million for having introduced Goldman and Alliance

22  to SGF the prior year, in 2007, "even if the Silver Deal was not completed."  *Id.* ¶

23  19.

24      <u>The Written Agreement</u>.  Despite these allegations of seriatim oral

25  agreements covering the same subject matter as one another and as the April 18,

26  2008 Written Agreement, the Written Agreement contains an express integration

27  clause, disclaiming the existence of any other such agreements.  It states that:

28      This Agreement constitutes the entire agreement of the parties with

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    respect to the subject matter hereof, and to the extent that this agreement

2    is inconsistent with any prior agreement(s) between the parties hereto,

3    the terms of this agreement are to control.  There are no agreements,

4    representations or warranties between or among the parties other than

5    those set forth in this Agreement and the other Transaction Agreements.

6   Layton Decl. Exh. B at p. 21, ¶ 12; *see also id.* p. 7 ¶ 1(bbb) (defining Transaction

7   Agreements as the constituent parts of the Written Agreement as described above).

8   As noted above, although the Written Agreement concerned the same subject matter

9   as the alleged oral agreements, it imposed no obligations on Goldman, it imposed

10   no obligations on any party unless financing was obtained, it provided for no

11   finder's fee or any other unconditional payment to any of the Silver Parties, and it

12   did not mention any of the pre-existing and inconsistent alleged oral agreements,

13   but rather disclaimed them.

14        ### *The Alleged Fraud*

15        In addition to the claimed contract breaches, the Silver Parties claim fraud,

16   They state, without any factual support, based on conclusory allegations, that

17   "[u]pon information and belief, neither Goldman nor Alliance ever intended to

18   arrange the funds necessary to make the payment of $30 million or any other sum to

19   Silver . . . ."  C ¶ 21; *see also id.* ¶ 48 (same).

20        ### *The Complaint*

21        On May 17, 2010, plaintiffs filed this complaint.

22                          ## Argument

23   **I.    The Claims for Breach of Oral Agreements Should Be Dismissed**

24   **Because They Are Both Implausible and Contradicted by the Terms**
**of the Written Agreement (Counts 1 and 2)**

25        The Supreme Court has made clear that a "plaintiff's obligation to provide

26   the 'grounds' of his 'entitlement to relief' requires more than labels and

27   conclusions, and a formulaic recitation of the elements of a cause of action will not

28   do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations

NOTICE OF MOTION AND
MOTION TO DISMISS

1   must be enough to raise a right to relief above the speculative level." *Id.*  In

2   considering a Rule 12(b)(6) motion, the Court need not accept as true unreasonable

3   inferences or conclusory legal allegations cast in the form of factual allegations.

4   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  It also is

5   improper for the Court to assume that the plaintiff "can prove facts that [the

6   plaintiff] has not alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

7   *Council of Carpenters*, 459 U.S. 519, 526 (1983).  Accordingly, the Court should

8   begin "by identifying pleadings that, because they are no more than conclusions,

9   are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.

10   Ct. 1937, 1950 (2009).  Such conclusory allegations must be disregarded.

11   In addition to these requirements, the necessary factual allegation must state

12   a claim for relief that is "plausible on its face."  *Id.* at 1949 (quoting *Twombly*, 550

13   U.S. at 570).  The plausibility standard requires "more than a sheer possibility that a

14   defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are

15   'merely consistent with' a defendant's liability, it 'stops short of the line between

16   possibility and 'plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550

17   U.S. at 577).  Likewise, if "the well-pleaded facts do not permit the court to infer

18   more than the mere possibility of misconduct, the complaint has alleged – but it has

19   not 'shown' – 'that the pleader is entitled to relief,'" and the complaint should be

20   dismissed.  *Id.* at 1950 (quoting Rule 8 (a)(2) (internal alterations omitted)).

21   Allegations in the complaint are not "plausible" if they contradict one

22   another or contradict facts that are established by the very documents on which

23   plaintiffs purport to rely.  *See, e.g.*, *Amore ex rel. Estates of Amore v. Accor*, 529 F.

24   Supp. 2d 85, 94-95 (D.D.C. 2008) ("Because the court does not accept as true self-

25   contradictory factual allegations and does not make favorable inferences that are

26   unsupported by facts set out in the complaint, the complaint's factual allegations do

27   not 'possess enough heft to show that the pleader is entitled to relief.'") (citing

28   *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) and quoting *Twombly*, 127 S.

NOTICE OF MOTION AND
MOTION TO DISMISS

1   Ct. at 1966).  Similarly, even before *Twombly* and *Iqbal*, it was well established that

2   courts were "not required to accept as true conclusory allegations which are

3   contradicted by documents referred to in the complaint."  *Wright v. Oregon*

4   *Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004) (quoting *Steckman v.*

5   *Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998)); *see also Sprewell*,

6   266 F.3d at 988 (to same effect).

7        As explained below, plaintiffs' oral contract claims should be dismissed in

8   their entirety.  *First*, the claims are not plausible on their face or when tested against

9   the terms of the Written Agreement on which plaintiffs also purport to rely.  The

10  oral agreement claims thus fail to meet the requirements of Rule 8, *Twombly*, and

11  *Iqbal*.  *Second*, the alleged oral contracts' terms are too uncertain and indefinite to

12  be enforceable.  *Third*, all of the oral contract claims against Alliance are barred by

13  the parol evidence rule, given the unequivocal integration clause in the Written

14  Agreement.  *Fourth*, all of the oral contract claims against Goldman are precluded

15  by the same Written Agreement, to which Goldman was not a party.

16       **A.    The Oral Contract Claims Are Implausible**

17       The Complaint cannot withstand the test of plausibility; indeed, its

18  allegations are entirely implausible, both on their face and as tested by the actual

19  terms of the Written Agreement.  All of the parties to each of the alleged

20  agreements are commercially sophisticated.  The entertainment assets that are the

21  subject of these agreements, according to plaintiffs' own allegations, are worth in

22  excess of $30 million.  When the parties – each represented by counsel – saw fit to

23  enter into an agreement to transfer these assets, they agreed it was necessary to draft

24  a complex series of integrated contracts spanning **125 single-spaced pages**, subject

25  to an express condition that financing first be obtained.  That these same parties

26  would enter into a series of unconditional, overlapping oral agreements covering

27  the sale of these same assets simply is implausible.

28       The implausibility of plaintiffs' allegations is further demonstrated by their

- 10 -

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

vagueness.  Plaintiffs allege they entered into the Written Agreement on a specific date, April 18, 2008.  They further allege that contract consisted of specific, named agreements; had extensive, detailed terms, including a 90-day financing contingency; and was agreed to by identified representatives of the Silver Parties, Alliance, and Momentum.  C ¶ 18; Layton Decl. Exh. A-E.  The Written Agreement has pages and pages of defined terms.  Indeed, the Assignment Agreement alone is 33 pages, including exhibits.  Layton Decl. Exh. B.  Just to state what exactly the Silver Parties agreed to assign takes too many pages to repeat in this brief, yet plaintiffs necessarily claim that complex description was somehow expressed orally and agreed to.  *See* Declaration of Fred Norton Exh. F (assignment clause of Assignment Agreement, with annotated defined terms).

The alleged oral agreements, in contrast, are hopelessly nebulous.  Plaintiffs do not identify even the months of these transactions, let alone dates.  C ¶ 10 (Silver Deal "during 2007"); *id.* ¶ 12 (Performance Agreement perhaps in "summer of 2007", complaint is unclear); *id.* ¶¶ 15, 17-18 (Forbearance Agreement some time between "late 2007" and April 18, 2008).  Plaintiffs also fail to identify the representatives of the contracting parties.  Plaintiffs do not even begin to explain what the "Slate Net Profits" or "Silver Participation" actually were, much less identify the oral terms that supposedly were specific enough to justify paying $35 million for those assets.  *Compare* Norton Decl. Exh. F (description of assigned rights taken from Written Agreement).

Plaintiffs' allegations regarding the alleged oral agreements are hopelessly inconsistent, entirely implausible, and contradicted by the express terms of the Written Agreement.  Under the standards articulated by the Supreme Court in *Twombley* and *Iqbal*, plaintiffs' claims based on the alleged oral agreements should be dismissed in their entirety.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

### B.   The Alleged Silver Deal, Performance Agreement and Forbearance Agreement Are Unenforceable

Plaintiffs' inconsistent, overlapping, and uncertain allegations of oral agreements fail for another reason:  the oral agreements that they allege are too vague and uncertain to be enforced.

To state a claim for breach of contract, the plaintiff must establish the existence of a valid, enforceable contract.  *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010).  It is hornbook law that where a contract is so uncertain and indefinite that the intention of the parties on material matters cannot be ascertained, the contract is void and unenforceable.  *Ladas v. California State Auto Ass'n*, 19 Cal. App. 4th 761, 770 (1993) (amorphous promise cannot create a contractual duty); 1 Williston on Contracts § 4:1 (4th ed. 2010) ("To be valid and enforceable, a contract must be reasonably definite and certain.").  The determination of whether a contract is sufficiently definite is a question of law for the Court.  *Id.* at 770 n.2.

**The Silver Deal.**  The allegations of an oral "Silver Deal" are incomplete and uncertain.  *First*, the Complaint never identifies the actual parties to the Silver Deal.  C ¶ 10 ("During 2007, the parties negotiated and concluded the material terms of a transaction . . . .").  It does not state which, if any, of the Silver Parties entered into that deal and does not allege that Alliance or Goldman or anyone else ever agreed to perform it.  *E.g.*, *Peterson Develop. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (1991) (letter of commitment was not a valid contract because it failed to specify the identity of the borrower).  Instead, plaintiffs allege only that "Goldman designated Alliance as the entity which **would** enter into the Silver Deal **assuming** that the Alliance Transaction was closed by Goldman."  C ¶ 11 (emphasis added).

*Second*, while the Complaint mentions a purchase price – $35 million – it provides no detail at all about what the Silver Parties supposedly were assigning in exchange for that substantial sum.  The Complaint alleges only that the purchaser –

- 12 -

whoever that might be – would get "a significant share" of the "Slate Net Profits" and "a significant portion" of the "Silver Participation." C ¶¶ 9-11. "Slate Net Profits" is defined only as a right to "receive a specified percentage of the profits derived from the Dark Castle Slate." C ¶ 9. "Silver Participation" is defined in the Complaint as a right "to receive a participation in certain gross receipts from the production and distribution of motion picture comprising the Dark Castle Slate." *Id.* The Dark Castle Slate is a group of "genre horror and action films" for which the Silver Parties had reached agreements for "financing, production and distribution" just months before the supposed Silver Deal, at some time in 2006. *Id.* ¶ 9.

Thus, at bottom, the Complaint alleges an agreement to assign to unspecified parties a "significant share" of an undefined "percentage" of some kind of "profits" from an undefined slate of movies that had not yet been made, and a "significant portion" of an undefined "participation" in "certain" but undefined "gross receipts" from those same yet to be completed films. Indefinite terms such as these do not form a contract. *See Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 210 (2006) (alleged oral agreement to form joint venture too uncertain to be enforced where agreement failed to specify the extent, duration, and nature of plaintiff's management role, if any; the amount of defendant's royalty; the equity percentages held by plaintiff, defendant, management team, and outside investors; and the liquidity path for plaintiff and investors); *Ladas*, 19 Cal. App. 4th at 771 (1993) (promises by a party "to pay 'parity' or 'according to industry standards' are not sufficiently definite to be enforceable").

**The Performance Agreement and Forbearance Agreement.** The allegations of an "oral" Performance Agreement and an "oral" Forbearance Agreement are equally vague and uncertain. In each case, plaintiffs merely allege that Goldman and Alliance agreed to enter into the same indefinite Silver Deal if some set of conditions was satisfied. These allegations fail to plead the existence of

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

a contract for the same reasons stated above:  the "Silver Deal" is not a contract.

Moreover, in the case of the Forbearance Agreement, the alleged condition creates still more uncertainty.  In that oral agreement, Goldman and Alliance purportedly promised "to use commercially reasonable efforts to arrange the funds necessary to make the $30 million payment under the Silver Deal" but there is no allegation of the duration of those efforts.  As a result, that alleged promise is fatally indefinite.  *See Bustamante,* 141 Cal. App. 4th at 210 (finding that the "conditions for performance are fatally uncertain" where party allegedly promised to "take all steps necessary to obtain adequate funding" for an indefinite duration).

### C.    Oral Contract Claims Against Alliance Are Barred by the Parol Evidence Rule

The Silver Parties claim that Alliance breached three oral agreements:  the Performance Agreement, the Forbearance Agreement, and the Fee Agreement. These alleged oral agreements cover the same subject matter as the Written Agreement, and by plaintiffs' own admission, were entered into prior to or contemporaneously with the Written Agreement.  C ¶¶ 17-19.  Consequently, those purported oral agreements were superseded by the Written Agreement because, under the parol evidence rule, the execution of a contract in writing supersedes all prior or contemporaneous oral agreements concerning the same subject matter.  *See* Cal. Civ. Code § 1625; Cal. Civ. Proc. Code § 1856(a); *Metoyer v. Chassman*, 504 F.3d 919, 936 (9th Cir. 2007) ("Under the parol evidence rule, Nirchl's prior oral representations, which would not naturally have been made as a separate contract, are inadmissible 'to vary or contradict the terms of an integrated written instrument.'") (quoting *Wagner v. Glendale Adventist Med. Ctr.*, 216 Cal. App. 3d 1379, 1385 (1989)); *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356, 364 n.4 (1998) ("the written express contract superseded all prior oral agreements"); *Sullivan v. Mass. Mut. Ins. Co.*, 611 F.2d 261, 264 (9th Cir. 1979); *In re Ankeny*, 184 B.R. 64 (B.A.P. 9th Cir. 1995).

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

As a matter of law, no claim against Alliance based on the alleged oral agreements can stand.  Counts 2 and 3 against Alliance should be dismissed.

### D.     The Oral Contract Claims Against Goldman Fail In Light of the Undisputed Terms of the Written Agreement

As explained above, as a matter of law, there are no oral agreements between plaintiffs and Alliance, there is only a Written Agreement.  For similar reasons, there can be no oral agreement between plaintiffs and Goldman:  the allegations of oral agreements with Goldman are "contradicted by documents referred to in the complaint," *Wright*, 360 F.3d at 1096, specifically, the Written Agreement.

Simply put, the oral agreements cannot coexist with the Written Agreement, or each other.  According to plaintiffs, they had sold the Slate Net Profits and Silver Participation to Alliance for $35 million in the Silver Deal and the Performance Agreement, to Alliance and possibly Goldman for $30 million in the Forbearance Agreement, and ultimately to Momentum for $30 million in the Written Agreement. Logically, plaintiffs cannot agree to sell the same asset four different times to three different purchasers and then seek to enforce all four sales.  The only plausible conclusion is that the comprehensive and integrated Written Agreement constitutes the entire and final agreement covering the sale of those assets.

Indeed, plaintiffs' own representations in the Written Agreement preclude the notion that any oral contract exists with Alliance or Goldman.  The Written Agreement states that it "constitutes the entire agreement of the parties with respect to the subject matter hereof" and further states that "[t]here are no agreements, representations or warranties between or among the parties other than those set forth in this Agreement and the other Transaction Agreements."  Layton Decl. Exh. B at p. 21, ¶ 12.  Those statements – which are binding on the Silver Parties – directly contradict plaintiffs' allegations of an oral agreement with Goldman.  It cannot be the case that, as of April 18, 2008, Goldman had the right and obligation to acquire the Silver Parties' interests for $30 million, while Momentum had the

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  same right to the same assets.

2  In fact, in the Written Agreement the Silver Parties affirmatively stated that

3  their "execution, delivery and performance" of that agreement "will not result in

4  any material breach or violation of, or constitute a default under any material

5  agreement." Layton Decl. Exh. B at p. 16, ¶ 9(a)(vi).  But if the Silver Parties still

6  had a binding oral contract to deliver the same assets to Goldman (or Goldman and

7  Alliance), and a binding written contract to deliver them to Momentum – as

8  plaintiffs claim – then plaintiffs' performance of the Written Agreement **would**

9  breach the alleged oral agreement.  As plaintiffs' allegations in the Complaint

10  contradict what they said in the contract, the Court need not credit the Complaint.

11  The integration clause also contradicts plaintiffs' claim that performance of

12  the Written Agreement was conditional in any way on Goldman exercising

13  commercially reasonable efforts to obtain funding.  Plaintiffs claim there was an

14  oral agreement that Goldman would exercise commercially reasonable efforts to

15  obtain financing, and that if Goldman succeeded, Alliance and Momentum would

16  be required to perform the Written Agreement.  But any such oral agreement would

17  differ from, and materially change the Written Agreement.

18  The parol evidence rule prohibits plaintiffs from introducing evidence that

19  would contradict the meaning of a written agreement.  *See* Cal. Civ. Code § 1625;

20  Cal. Civ. Proc. Code § 1856(a); *Cruey*, 64 Cal. App. 4th at 364 n.4.  Plaintiffs'

21  allegations that Goldman is liable for breach of an oral agreement would do exactly

22  that, by materially altering the terms of the Written Agreement with Alliance and

23  Momentum.  Further, as discussed above, settled pleading standards do not allow a

24  plaintiff to agree to one thing in a contract, and plead something else when suing on

25  that contract.  For these reasons as well, Counts 2 and 3 should be dismissed against

26  Goldman.

27

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

## II.    The Claims for Breach of Oral Agreements Fail for Additional Reasons as Well (Counts 2 and 3)

In addition to the defects identified above, plaintiffs' allegations that Alliance and Goldman breached the oral agreements are legally deficient on other grounds as well.  As explained below, the claim for breach of the Silver Deal and Performance Agreement is time-barred.  In addition, the claim for breach of the Fee Agreement (Count 3) fails because the Complaint does not allege a contract, but rather a gratuitous promise made long after Silver had allegedly fully performed.

### A.    Claims for Breach of the "Silver Deal" and the "Performance Agreement" Against Goldman and Alliance Are Time-Barred

Plaintiffs' claims for breach of the so-called "Silver Deal" and the so-called "Performance Agreement" are barred by California's two-year statute of limitations for oral contracts.  Cal. Civ. Proc. Code § 339.

A breach of oral contract claim accrues at the time of the breach or repudiation.  *See*, *e.g.*, *Wiz Tech., Inc. v. Coopers & Lybrand*, 106 Cal. App. 4th 1, 14 (2003); *Parker v. Walker*, 5 Cal. App. 4th 1173, 1190 (1992).  Here, plaintiffs admit that the alleged breach or repudiation of the Silver Deal and the Performance Agreement occurred more than two years before the Complaint was filed.  Indeed, the Complaint specifically alleges that in "late 2007" "Goldman and Alliance advised the Silver Parties that they would not perform the Performance Agreement or close the Silver Deal or pay the Silver Parties $35 million . . . ."  C ¶ 15.  According to the plaintiffs, "Defendants thus repudiated and breached their prior agreements."  *Id.*

Plaintiffs filed suit on May 17, 2010.  As the alleged breach occurred more than two years earlier, plaintiffs' claim fails as a matter of law.  *See Wiz Tech.*, 106 Cal. App. 4th at 14; *Parker*, 5 Cal. App. 4th at 1190.

### B.    The "Fee Agreement" Is Not a Binding Contract

Plaintiffs allege that at some time in summer 2007, Goldman requested that Silver assist Goldman in locating an investor for Alliance, and that Silver obliged

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   by making an introduction to "SGF", which later invested $100 million in Alliance.

2   C ¶¶ 12-13.  Plaintiffs then allege that approximately nine months later, in early

3   2008 and around the time of the April 18, 2008 Written Agreement,

> 4   the parties negotiated and agreed orally upon an amount that Silver
>
> 5   would be paid (even if the Silver Deal was not completed) as
>
> 6   reasonable compensation for the valuable introduction of Goldman to
>
> 7   Alliance, and the time and effort involved in assisting with the SGF
>
> 8   financing and the completion of the Alliance Transaction.

9   *Id.* ¶ 19.  Thus, the Complaint makes clear that any alleged performance came well

10   before the alleged oral agreement.

11   Where a party has already rendered services before there was an agreement to

12   pay, there is no contract.  *E.g.*, *Simmons v. Cal. Inst. of Tech.*, 34 Cal. 2d 264, 271-

13   72 (1949) (because consideration bargained for was past services, there was no

14   contract); *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247 (1997) (past

15   services was unenforceable promise to make a gift).[5]  Consequently, plaintiffs have

16   not stated a claim against Goldman or Alliance for breach of the purported Fee

17   Agreement and the claim should be dismissed.

18   **III.   The Claims for Breach of a Written Agreement Fail (Count 1)**

19   The Silver Parties claim breach of a Written Agreement that required

20   Alliance to use commercially reasonable efforts to obtain financing during the

21   summer of 2008.  All three defendants are named on this count.  For several

22   reasons, as set forth below, the claim for breach of the Written Agreement should

23   be dismissed.

24

25

---

26   [5] In addition, for there to be a contract, its terms must be reasonably certain before
     performance.  A vague expectation that one will be compensated for services
27   rendered is insufficient.  *See Holmes v. Lerner*, 74 Cal. App. 4th 442, 457-58
28   (1999).

- 18 -

### A.      Goldman Is Not a Party to the Written Agreement

The Silver Parties allege that on April 18, 2008, "Alliance, Momentum, and the Silver Parties entered into a written Assignment Agreement and certain ancillary agreements." C ¶ 18.  The Silver Parties nowhere allege that Goldman was a party to that agreement, for it was not.  *See* Layton Decl. Exh. A at p. 1.

It is black letter law that a claim for breach of contract requires that there be a contract between the parties.  *See Reichert v. Gen. Ins. Co. of America*, 68 Cal. 2d 822, 830 (1968).  There is none, and the Silver Parties thus have no claim against Goldman for breach of a written agreement.  *Brown v. Cal. State Lottery Comm'n*, 232 Cal. App. 3d 1335, 1339-40 (1991).  Count 1 against Goldman should be dismissed.

### B.      Plaintiffs Do Not Allege That Momentum Breached Any Contract

The Silver Parties do allege that Momentum, unlike Goldman, was a party to the Written Agreement.  C ¶ 18.  But the Complaint never alleges that the Written Agreement required Momentum to obtain financing for Alliance (or do anything else), nor does it allege that Momentum ever did anything that constitutes a breach of any agreement, written or oral.  *Id.* ¶ 18 (alleging that the Written Agreement required Alliance to exercise commercially reasonable efforts to obtain financing within 90 days); *id.* ¶¶ 25-28 (describing alleged breaches by Alliance alone); *see also* Layton Decl. Exh. A at p. 1, ¶ (1) (April 18, 2008 letter agreement specifying only that Alliance would use commercially reasonable efforts to obtain financing).

With no allegation that Momentum owed any particular contractual duty and no allegation that Momentum breached any contractual term, plaintiffs' breach of contract claim fails.  *See Marques v. Mortgageit, Inc.*, No. 09-1154, 2009 WL 4980269, at *7 (C.D. Cal. Dec. 14, 2009) (breach of contract claim failed because plaintiff did not identify any term of the written contract breached by defendant); *Heller v. Pillsbury, Madison & Sutro*, 50 Cal. App. 4th 1367, 1385 (1996).  Because this is the only claim that the Silver Parties purport to assert against

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Momentum, Momentum should be dismissed from the action.

### C. The Complaint Fails to Plead a Breach of the Written Agreement By Alliance

The only assertion in the entire Complaint to establish a breach of the Written Agreement appears in paragraph 21 (repeated almost verbatim in paragraphs 26 and 27). There plaintiffs allege:

> Upon information and belief neither Goldman or [*sic*] Alliance ever intended to arrange the funds necessary to make the payment of $30 million or any other sum to Silver, Inc. and Silver Slate, and neither used commercially reasonable efforts, or any material efforts, to do so in violation of their representations and agreements alleged hereinabove.

This bare conclusion of a contractual breach, untethered to any factual allegation, runs afoul of the requirement that plaintiffs provide the "grounds" of their entitlement to relief with "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Such "conclusions are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.

"Simply put, Plaintiffs were required to plead sufficient facts to demonstrate why and how [defendant] allegedly breached its contracts with Plaintiffs; it is not enough for them to simply recite the magic word 'breach' in order to avoid dismissal." *Johnson v. Homeownership Pres. Found.*, No. 09-600, 2009 WL 6067018, at *7 (D. Minn. Dec. 18, 2009) (internal quotations and citations omitted). Plaintiffs' bare allegation that defendants did not use commercially reasonable efforts – without explaining what Goldman or Alliance in fact did or what made that performance inadequate under the circumstances – does not meet this standard. *See Phillips v. "MERS" Mortgage Elec. Registration Sys.*, No. 1:09-CV-01028, 2009 WL 3233865, at *10 (E.D. Cal. Oct. 2, 2009) (granting motion to dismiss unfair lending practices claim where complaint merely alleged that defendant "made a home loan to the plaintiffs without determining or using commercially

NOTICE OF MOTION AND
MOTION TO DISMISS

1  reasonable means or mechanisms that the borrowers had the ability to repay the

2  loan").  Indeed, courts have repeatedly applied the rule of *Twombly* and *Iqbal* to

3  bare allegations of contractual breach, and dismissed such claims.  *See, e.g.*,

4  *Textron Fin. Corp. v. Turbine Airfoil Designs, Inc.*, No. 09-CV-01714, 2010 WL

5  2265649, at *4 (M.D. Pa. June 4, 2010) (dismissing breach of contract counterclaim

6  where complaint was "bereft of any non-conclusory factual allegations or assertions

7  with respect to a breach of contract claim").[6]

8      Plaintiffs have failed to plead breach of the Written Agreement, and Count 1

9  should be dismissed for this reason as well.

10  ## IV.    The Claim for Unjust Enrichment Fails (Count 4)

11      Plaintiffs also bring a claim for unjust enrichment against Alliance and

12  Goldman, based on the allegations that the Silver Parties assisted Goldman and

13  Alliance by introducing them to SGF, which later made an investment in Alliance.

14  C ¶¶ 41-46.  This claim also fails as a matter of law.  *First*, as noted above, the

15  integrated April 18, 2008 Written Agreement denies the existence of any oral

16  agreement to pay Silver a fee.  *Second*, in California, there is no cause of action for

17  unjust enrichment.  *See Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911

18  (2008); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).

19  *Third*, even if Silver's claim were construed as an actual viable cause of action,

20  such as quantum meruit, it would be subject to California's two-year statute of

21  limitations for obligations not founded on a writing – and would thus be time-

22

23  [6] *See also Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC*, No. 10-

24  00188, 2010 WL 1929566, at *5 (N.D. Cal. May 12, 2010) (finding that complaint
failed to adequately plead breach of contract, and granting motion to dismiss, where

25  complaint alleged in five paragraphs that defendant "breached the contract by
failing to surrender the premises in good condition in accordance with Paragraph 18

26  of the leases"); *American Surgical Assistants, Inc. v. United Healthcare of Texas*,

27  *Inc.*, No. 4:09-CV-0774, 2010 WL 1340557 (S.D. Tex. Mar. 30, 2010) (granting
motion to dismiss and holding that allegation that defendant "failed and refused to

28  abide by" the contract was conclusory).

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1   barred.  *See* Cal. Civ. Proc. Code § 339; *Iverson, Yoakum, Papiano & Hatch v.*

2   *Berwald*, 76 Cal. App. 4th 990, 996 (1999); *see also Kroff v. Larson*, 167 Cal. App.

3   3d 857, 860 (1985) (cause of action for quantum meruit accrues when the services

4   have been fully rendered or when a stated contingency occurs).

5   ### V.    The Claim for Fraud Fails (Count 5)

6       Plaintiffs allege fraud against Goldman and Alliance.  Plaintiffs' only

7   allegation supporting this claim is that Goldman and Alliance "never intended" to

8   comply with the agreements allegedly made by Goldman and Alliance.  C ¶ 48.

9   The claim fails against both Goldman and Alliance for the reasons set forth below.

10   ### A.    The Complaint Fails to Plead Fraud by Goldman or Alliance

11       Under Federal Rule of Civil Procedure (9)(b) and California law, fraud must

12   be pled with particularity.  Fed. R. Civ. P. 9(b) ; *Citizens of Humanity, LLC v.*

13   *Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 20 (2009).  Thus, "[a]verments of

14   fraud must be accompanied by 'the who, what, when, where and how of misconduct

15   charged.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

16   (internal citation omitted).

17       Here the Complaint alleges only nonperformance and that "said Defendants

18   never intended to comply" with the parties' alleged oral and written agreements.  C

19   ¶ 48; *see id.* ¶¶ 16, 21.  This allegation is wholly lacking of the detail required by

20   Rule 9(b).  Plaintiffs allege no facts to show that Alliance or Goldman did not

21   intend to perform the alleged agreements at the time of formation.

22       Furthermore, general allegations that a corporation committed fraud, without

23   identifying the individuals who made the purportedly false representations, are

24   insufficient under Rule 9(b).  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, Inc.*,

25   No. 07-CV-912, 2007 WL 2206946, at *5 (S.D. Cal. Jul. 27, 2007).  Plaintiffs fail

26   to identify the individual or individuals.

27       Finally, a fraud claim also fails for want of particularity where "the complaint

28   lumps the two defendants together without alleging the role or participation of each

NOTICE OF MOTION AND
MOTION TO DISMISS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  defendant in the fraud." *Id.* (citing *Moore v. Kayport Package Express, Inc.*, 885

2  F.2d 531, 541 (9th Cir. 1989); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th

3  Cir. 2007)).  Throughout the Complaint plaintiffs lump Goldman, Alliance, and

4  Momentum together (despite the fact that no fraud claim is even asserted against

5  Momentum) and never separate the entities to plead the fraud allegations as to each

6  defendant.  Rule 9(b) does not permit this.

7  **B.   The Complaint Fails to Plead Promissory Fraud by Goldman or Alliance**

8

9       Plaintiffs fraud claim alleges "promissory fraud," i.e., that the defendant

10  made a promise without the intention of performing.  For a promissory fraud claim,

11  the plaintiff must establish that the defendant did not intend to perform the promise

12  at the time that it was made.  *Helmer v. Bingham Toyota Isuzu*, 129 Cal. App. 4th

13  1121, 1130 (2005).  The elements are (1) misrepresentation (false representation,

14  concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e.,

15  to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v.*

16  *Superior Court*, 12 Cal. 4th 631, 638 (1996).

17      A bare allegation simply that defendant had no intention to be bound by the

18  terms of the parties' agreement – like the allegation made by plaintiffs here – is

19  insufficient.  *See Nikoonahad v. Rudolph Techs., Inc.*, No. 08-2290, 2008 WL

20  4065831, at *4 (N.D. Cal. Aug. 27, 2008) (plaintiff failed to plead fraud by merely

21  alleging that defendant "had no intention to be bound by the terms as agreed");

22  *Premiere Innovations, Inc. v. IWAS Indus., Inc.*, No. 07cv1083, 2007 WL 2873442,

23  at *2 (S.D. Cal. Sep. 28, 2007) (same).  In addition, an allegation of

24  nonperformance alone is not enough to plead the defendant's intent not to perform

25  the promise.  *See Mat-Van, Inc. v. Sheldon Good & Co. Auctions, Inc.*, No. 07-CV-

26  912, 2007 WL 2206946, at *6 (S.D. Cal. Jul. 27, 2007).

27      Plaintiffs have alleged nothing more than that Goldman and Alliance did not

28  intend to comply with their alleged agreements.  Indeed, for **all** of the required

NOTICE OF MOTION AND
MOTION TO DISMISS

1  elements of a fraud claim, plaintiffs have merely provided the "formulaic recitation

2  of the elements of a cause of action" that "will not do."  *Twombly*, 550 U.S. at 555.

3  *See* C ¶¶ 48-50.  Plaintiffs' fraud claim fails as a matter of law.

4  <u>**Conclusion**</u>

5  For the reasons stated above, the Court should grant defendants' motion to

6  dismiss the Complaint in its entirety.

7

8  DATED:  July 30, 2010          BOIES, SCHILLER & FLEXNER LLP

9

10          By /s/ _____

11              Fred Norton

12          Attorneys for Defendants The Goldman Sachs
           Group, Inc., Alliance Films Inc. and Momentum
           Pictures USA, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A