1  BOIES, SCHILLER & FLEXNER LLP
   Jonathan D. Schiller (pro hac vice)
2  jschiller@bsfllp.com
   575 Lexington Ave., 7th Floor
3  New York, NY 10022
   Telephone: 212.446.2300
4  Facsimile:  212.446.2350

5  Fred Norton (SBN 224725)
   fnorton@bsfllp.com
6  1999 Harrison St., Suite 900
   Oakland, CA 94612
7  Telephone: 510.874.1000
   Facsimile:  510.874.1460

8
   David L. Zifkin (SBN 232845)
9  dzifkin@bsfllp.com
   225 Santa Monica Blvd., 11th Floor
10 Santa Monica, CA 90401
   Telephone: 310.395.5800
11 Facsimile:  510.874.1460

12 Attorneys for Defendants/Counter-Claimants

13 *The Goldman Sachs Group, Inc., Alliance Films Inc. and Momentum Pictures USA, Inc.*

14

15                UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17 | JOEL SILVER, an individual, SILVER PICTURES, INC., and SILVER SLATE, LLC | Case No.  CV 10-4961 RSWL |
18 | | |
| | DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEFENDANTS ALLIANCE FILMS INC. AND MOMENTUM PICTURES, INC.'S COUNTERCLAIM FOR: |
19 |                    Plaintiffs, | |
20 |          v. | |
21 | | |
22 | THE GOLDMAN SACHS GROUP, INC., ALLIANCE FILMS INC., and | |
23 | MOMENTUM PICTURES USA, INC., | |
24 |                    Defendants. | 1. Fraud |
| | 2. Negligent Misrepresentation |
25

26

27

28

FILED
2011 JUL 19  PM 4:15
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

Counter-Claimants

ALLIANCE FILMS INC., and
MOMENTUM PICTURES USA, INC.,

v.

JOEL SILVER, an individual, SILVER
PICTURES, INC., and SILVER SLATE,
LLC

- ii -

1    Defendants The Goldman Sachs Group, Inc. ("Goldman"), Alliance Films

2    Inc. ("Alliance") and Momentum Pictures USA, Inc. ("Momentum"), by and

3    through their undersigned counsel, for their Amended Answer to the First Amended

4    Complaint (the "FAC"), respond to the allegations as follows:[1]

5                                          **PARTIES**

6         1.    Defendants lack knowledge sufficient to form a belief as to the truth of

7    the allegations in Paragraph 1 of the FAC, except admit and aver, on information

8    and belief, that Silver engages in business activities related to the entertainment

9    industry.

10        2.    Defendants deny the allegations in Paragraph 2 of the FAC, except

11   admit and aver that Goldman is a Delaware corporation, is headquartered at 200

12   West Street, New York, New York 10282, and is registered to do business in

13   California, and that affiliates of Goldman have offices in Los Angeles, California.

14   Defendants further state that Goldman is not a proper party for the reasons set forth

15   in footnote 1 supra. This statement applies to each and every reference to Goldman

16   in the FAC, and is incorporated by reference in Defendants' responses herein to

17   each paragraph in the FAC that makes reference to Goldman.

18        3.    Defendants deny the allegations in Paragraph 3 of the FAC, except

19   admit and aver that Alliance is a separate and distinct Canadian corporation with its

20   head office in Montreal, Quebec, Canada and that Alliance does business with

21   companies that have offices in California. Defendants state that the second and

22   third sentences of Paragraph 3 of the FAC purport to state a legal conclusion as to

[1] As Defendants expressly stated in their motion to dismiss the complaint (Dkt. No. 7, MTD Memo. of P&A at 1-2 n.2) and motion to dismiss the first amended complaint (Dkt. No. 23, MTD FAC Memo. of P&A at 1 n.2), the Goldman Sachs Group, Inc. was improperly named as a defendant in this action. The Goldman Sachs Group, Inc. is the publicly-held parent company of the Goldman Sachs organization; it is not a registered broker-dealer, does not provide investment banking services and did not act as a financial sponsor of the transactions at issue. This Answer is provided without prejudice to the right of The Goldman Sachs Group, Inc. to obtain dismissal of all claims asserted against it and to quash all discovery demands directed to it on the ground that The Goldman Sachs Group, Inc. is not a proper party.

- 1 -                DEFENDANTS' AMENDED ANSWER TO
                     FAC AND COUNTERCLAIM

1  which no response is required, and to the extent a response is required, deny such

2  allegation.

3       4.     Defendants deny the allegations in Paragraph 4 of the FAC, except

4  admit and aver that Momentum is a Delaware corporation and does business with

5  companies that have offices in California.  Defendants state that the second and

6  third sentences of Paragraph 4 of the FAC purport to state a legal conclusion as to

7  which no response is required, and to the extent a response is required, deny such

8  allegation.

9       5.     Defendants state that Paragraph 5 of the FAC purports to state a legal

10  conclusion as to which no response is required, and to the extent a response is

11  required, deny the allegations in Paragraph 5 of the FAC.

12       6.     Defendants lack knowledge sufficient to form a belief as to the truth of

13  the allegations in Paragraph 6 of the FAC.  Defendants further state that, at this late

14  date, Plaintiffs are not permitted to amend their complaint a second time to set forth

15  the "true names" of the supposed DOE Defendants and the DOE Defendants should

16  be dismissed.

17  **CHARGING ALLEGATIONS**

18       7.     Defendants deny the allegations in Paragraph 7 of the FAC.

19       8.     Defendants deny the allegations in Paragraph 8 of the FAC, except

20  admit and aver, on information and belief, that Silver is a film and television

21  producer and Silver is involved with the film label named "Dark Castle."

22       9.     Defendants deny that the allegations in Paragraph 9 of the FAC set

23  forth an accurate and complete description of the contracts referred to therein, and

24  refer to those contracts for their contents.

25       10.    Defendants deny the allegations in Paragraph 10 of the FAC, except

26  admit and aver that affiliates of Goldman provide investment banking services and

27  refer to Goldman's periodic public filings for a complete description of Goldman's

28  business and financial results, including any loans from the United States

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

1  government through the Troubled Asset Relief Program.

2       11.    Defendants deny the allegations in Paragraph 11 of the FAC.

3       12.    Defendants deny the allegations in Paragraph 12 of the FAC, except

4  admit and aver that representatives of certain of Goldman's affiliates from time to

5  time communicated with Silver in 2007.

6       13.    Defendants deny the allegations in Paragraph 13 of the FAC.

7       14.    Defendants deny the allegations in Paragraph 14 of the FAC, except

8  admit and aver that Alliance is a television and motion picture distribution

9  company.

10       15.    Defendants deny the allegations in Paragraph 15 of the FAC.  The last

11  sentence of Paragraph 15 of the FAC purports to state a legal conclusion as to

12  which no response is required, but to the extent a response is required Defendants

13  admit and aver that a Canadian entity or entities must control Alliance.

14       16.    Defendants deny the allegations in Paragraph 16 of the FAC, except

15  admit and aver, on information and belief, that Société générale de financement du

16  Québec ("SGF") provided financing for the Dark Castle Slate.

17       17.    Defendants deny the allegations in Paragraph 17 of the FAC.

18       18.    Defendants deny the allegations in Paragraph 18 of the FAC, except

19  lack knowledge sufficient to form a belief as to whether Silver and other

20  representatives of the Silver Parties had meetings, telephone conversations, and

21  other contacts with SGF as set forth in Paragraph 18 of the FAC.

22       19.    Defendants deny the allegations in Paragraph 19 of the FAC, except

23  admit and aver, on information and belief, that SGF invested in Alliance in 2008.

24       20.    Defendants deny the allegations in Paragraph 20 of the FAC.

25       21.    Defendants deny the allegations in Paragraph 21 of the FAC.

26       22.    Defendants deny the allegations in Paragraph 22 of the FAC.

27       23.    Defendants deny the allegations in Paragraph 23 of the FAC, except:

28  (i) admit and aver that Alliance and Momentum, on the one hand, and certain of the

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

Silver Parties, on the other hand, entered into a written Assignment Agreement and a related letter agreement and that Alliance and certain of the Silver Parties entered into a written Distribution Agreement, a written TV First Look Agreement, and a written New Studio Deal Agreement, all of which are dated April 18, 2008 (collectively, the "Written Agreement"); and (ii) refer to the Written Agreement for its contents.

24.     Defendants deny the allegations in Paragraph 24 of the FAC.

25.     Defendants deny the allegations in Paragraph 25 of the FAC.

26.     Defendants deny the allegations in Paragraph 26 of the FAC, except admit and aver that, after the 90 Day Period (as defined in the Written Agreement) expired, Alliance informed the Silver Parties that, despite its commercially reasonable efforts during the 90 Day Period amidst the global economic crisis, it was unable to arrange the financing contemplated under the Written Agreement.

27.     Defendants deny the allegations in Paragraph 27 of the FAC.

28.     Defendants deny the allegations in Paragraph 28 of the FAC.

29.     Defendants deny the allegations in Paragraph 29 of the FAC.

30.     Defendants deny the allegations in Paragraph 30 of the FAC, except admit and aver that Alliance informed Silver or Silver's agent in 2009 that Alliance would not pay Silver or Silver Inc. $2 million.

## FIRST CAUSE OF ACTION

### [Breach of Written Contract– Against Alliance and Momentum]

31.     Defendants repeat and incorporate by reference their responses to Paragraph 1 through 30 of the FAC.

32.     Defendants deny that the allegations in Paragraph 31 of the FAC set forth an accurate and complete description of the contracts referred to therein, and refer to those Written Agreement for its contents.

33.     Defendants deny the allegations in Paragraph 33 of the FAC.

34.     Defendants state that Paragraph 34 of the FAC sets forth Plaintiffs'

1   conclusions of law to which no answer is required.  To the extent an answer is

2   required, Defendants deny the allegations in Paragraph 34 of the FAC.

3        35.   Defendants lack knowledge sufficient to form a belief as to the truth of

4   the allegations set forth in Paragraph 35 of the FAC.

5        36.   Defendants deny the allegations in Paragraph 36 of the FAC.

6   <div align="center">**SECOND CAUSE OF ACTION**</div>

7   <div align="center">**[Breach of Oral Contract (Forbearance Agreement) – Against Goldman]**</div>

8        37.   Defendants repeat and incorporate by reference their responses to

9   Paragraph 1 through 36 of the FAC.

10       38.   Defendants state that Paragraph 38 of the FAC sets forth Plaintiffs'

11  conclusions of law to which no answer is required.  To the extent an answer is

12  required, Defendants deny the allegations in Paragraph 38 of the FAC.

13       39.   Defendants state that Paragraph 39 of the FAC sets forth Plaintiffs'

14  conclusions of law to which no answer is required.  To the extent an answer is

15  required, Defendants deny the allegations in Paragraph 39 of the FAC.

16       40.   Defendants deny the allegations in Paragraph 40 of the FAC.

17       41.   Defendants state that Paragraph 41 of the FAC sets forth Plaintiffs'

18  conclusions of law to which no answer is required.  To the extent an answer is

19  required, Defendants deny the allegations in Paragraph 41 of the FAC.

20       42.   Defendants deny the allegations in Paragraph 42 of the FAC.

21  <div align="center">**THIRD CAUSE OF ACTION**</div>

22  <div align="center">**[Breach of Oral Contracts (Performance Agreement and Silver Deal) – Against**</div>

23  <div align="center">**Goldman]**</div>

24       43.   Defendants repeat and incorporate by reference their responses to

25  Paragraph 1 through 42 of the FAC.

26       44.   Defendants state that Paragraph 44 of the FAC sets forth Plaintiffs'

27  conclusions of law to which no answer is required.  To the extent an answer is

28  required, Defendants deny the allegations in Paragraph 44 of the FAC.

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

45.   Defendants state that Paragraph 45 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 45 of the FAC.

46.   Defendants state that Paragraph 46 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 46 of the FAC.

47.   Defendants deny the allegations in Paragraph 47 of the FAC.

48.   Defendants deny the allegations in Paragraph 48 of the FAC.

## FOURTH CAUSE OF ACTION

### [Breach of Fee Agreement – Against Goldman and Alliance]

49.   Defendants repeat and incorporate by reference their responses to Paragraph 1 through 48 of the FAC.

50.   Defendants deny the allegations in Paragraph 50 of the FAC.

51.   Defendants deny the allegations in Paragraph 51 of the FAC.

52.   Defendants deny the allegations in Paragraph 52 of the FAC.

53.   Defendants state that Paragraph 53 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 53 of the FAC.

54.   Defendants deny the allegations in Paragraph 54 of the FAC.

## FIFTH CAUSE OF ACTION

### [Quantum Meruit – Against Goldman and Alliance]

55.   Defendants repeat and incorporate by reference their responses to Paragraph 1 through 54 of the FAC.

56.   Defendants state that Paragraph 56 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 56 of the FAC.

57.   Defendants deny the allegations in Paragraph 57 of the FAC.

58.   Defendants deny the allegations in Paragraph 58 of the FAC.

DEFENDANTS' AMENDED ANSWER TO FAC AND COUNTERCLAIM

59.   Defendants state that Paragraph 59 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 59 of the FAC.

60.   Defendants state that Paragraph 60 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 60 of the FAC.

## SIXTH CAUSE OF ACTION

### [Promissory Fraud – Against Goldman and Alliance]

61.   Defendants repeat and incorporate by reference their responses to Paragraph 1 through 60 of the FAC.

62.   Defendants deny the allegations in Paragraph 62 of the FAC.

63.   Defendants deny the allegations in Paragraph 63 of the FAC.

64.   Defendants deny the allegations in Paragraph 64 of the FAC.

65.   Defendants deny the allegations in Paragraph 65 of the FAC.

66.   Defendants deny the allegations in Paragraph 66 of the FAC.

67.   Defendants state that Paragraph 67 of the FAC sets forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 67 of the FAC.  Defendants further state that Plaintiffs' claim for exemplary and punitive damages is barred by the Written Agreement and must be stricken.

## SEVENTH CAUSE OF ACTION

### [Negligent Misrepresentation – Against Goldman and Alliance]

68.   Defendants repeat and incorporate by reference their responses to Paragraph 1 through 67 of the FAC.

69.   Defendants deny the allegations in Paragraph 69 of the FAC.

70.   Defendants deny the allegations in Paragraph 70 of the FAC.

71.   Defendants deny the allegations in Paragraph 71 of the FAC.

72.   Defendants deny the allegations in Paragraph 72 of the FAC.

DEFENDANTS' AMENDED ANSWER TO FAC AND COUNTERCLAIM

73.   Defendants deny the allegations in Paragraph 73 of the FAC.

## PRAYER FOR RELIEF

Defendants state that the "PRAYER FOR RELIEF" paragraphs following Paragraph 73 of the FAC set forth Plaintiffs' prayer for relief to which no answer is required.  To the extent a response is required, Defendants deny the allegations in the "PRAYER FOR RELIEF" paragraphs following Paragraph 73 of the FAC and deny that Plaintiffs are entitled to any relief whatsoever.  Defendants further state that Plaintiffs' claim for punitive damages is barred by the Written Agreement.

## AFFIRMATIVE DEFENSES

In addition to its responses to the numbered paragraphs of the FAC, Defendants hereby set forth the following affirmative defenses to Plaintiffs' claims, each to be considered in the alternative.  Defendants reserve the right to add additional affirmative defenses as they become available.

### First Affirmative Defense

The FAC fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

### Third Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the Written Agreement.

### Fourth Affirmative Defense

Plaintiffs' recovery, if any, is barred in whole or in part by the doctrine of unclean hands.

### Fifth Affirmative Defense

Plaintiffs' recovery, if any, is barred in whole or in part to the extent they lack standing.

### Sixth Affirmative Defense

Plaintiffs' claims are barred in whole or in part because Defendants

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

1  performed all of their contractual obligations and did not breach any agreement

2  with Plaintiffs.

### Seventh Affirmative Defense

4      Plaintiffs' claims are barred in whole or in part because they failed to

5  perform their contractual obligations.

### Eighth Affirmative Defense

7      Plaintiffs' recovery, if any, is barred in whole or in part by the doctrine of

8  laches.

### Ninth Affirmative Defense

10     Plaintiffs' alleged loss, if any, is the result of intervening and/or superseding

11  causes for which Defendants were not and are not responsible.

### Tenth Affirmative Defense

13     Plaintiffs' equitable claims, if any, are barred in whole or in part because

14  Plaintiffs have an adequate remedy at law.

### Eleventh Affirmative Defense

16     Plaintiffs' breach of oral contract claims are barred in whole or in part

17  because Defendants did not consent to enter into or express an intent to be bound by

18  any oral contract with Plaintiffs.

### Twelfth Affirmative Defense

20     Plaintiffs' recovery, if any, is barred in whole or in part by their failure to

21  mitigate damages.

### Thirteenth Affirmative Defense

23     Plaintiffs' recovery, if any, is barred in whole or in part by their own

24  contributory and/or comparative negligence, and/or their own assumption of risk.

### Fourteenth Affirmative Defense

26     Plaintiffs have suffered no injury in fact as a result of any acts of or failures

27  to act by Defendants.

28

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

### Fifteenth Affirmative Defense

Plaintiffs are barred from asserting their quantum meruit claim because Plaintiffs have failed to specify any conduct by Defendants that would indicate that there was an actual or implied promise.

### Sixteenth Affirmative Defense

Plaintiffs' claim for punitive damages is barred by the Written Agreement, and Plaintiffs have failed to state facts sufficient to impose punitive damages in any event.

### Seventeenth Affirmative Defense

Plaintiffs' breach of oral contract claims are barred in whole or in part for lack of consideration or inadequate consideration.

### Eighteenth Affirmative Defense

Plaintiffs' breach of oral contract claims are barred in whole or in part by the statute of frauds.

### Nineteenth Affirmative Defense

Plaintiffs' breach of oral contract and quantum meruit claims asserted are barred by reason of the provisions of sections 1567, 1576, 1577 and 1578 of the California Civil Code respecting mistake of fact and law.

### Twentieth Affirmative Defense

Plaintiffs' claims are without merit, in whole or in part, because performance of the Written Agreement and alleged oral contracts became impossible or totally impracticable due to the greatest economic recession since the Great Depression through no fault of the Defendants.

### Twenty-First Affirmative Defense

Plaintiffs' Sixth and Seventh Causes of Action are barred in whole or in part by the economic loss doctrine.

### Twenty-Second Affirmative Defense

The FAC does not plead fraud or negligent misrepresentation with the

- 10 -

particularity required under Rule 9(b) of the Federal Rules of Civil Procedure.

### Twenty-Third Affirmative Defense

Plaintiffs' claims are barred in whole or in part because they consented to Defendants' conduct.

### Twenty-Fourth Affirmative Defense

Plaintiffs' claims are barred in whole or in part by accord and satisfaction.

### Twenty-Fifth Affirmative Defense

Plaintiffs' contract claims are barred on the grounds that any contract between Plaintiffs and Defendants was fraudulently induced by Plaintiffs.

## DEFENDANTS ALLIANCE AND MOMENTUM'S COUNTERCLAIM

Alliance and Momentum counterclaim against Silver, Silver Pictures, and Silver Slate (collectively, the "Silver Parties") as follows, based on their own personal knowledge as to themselves, and on information and belief as to the acts of others:

### Background

74.    This counterclaim arises from the Silver Parties false and misleading representations to Alliance and Momentum (collectively, the "Counterclaimants") that resulted in Counterclaimants' expenditure of money, time and other resources in connection with negotiating and executing the Written Agreement. On information and belief, the Silver Parties were aware of and actively concealed the falsity of their representations.

75.    In April 2008, Counterclaimants entered into a Written Agreement with the Silver Parties. That Written Agreement had a 90-day financing contingency: If Alliance was unable to obtain financing within that 90-day period, then it would not have an obligation to go forward with the transactions contemplated by the Written Agreement, the Written Agreement would immediately and automatically terminate, and the Written Agreement would be null

- 11 -    DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

1   and void.  Due to the global economic crisis that hit just as the parties' executed the

2   Written Agreement, Alliance had no ability whatsoever to obtain financing and the

3   Written Agreement terminated.

4       76.     The Written Agreement contemplated, among other things, that—if

5   Alliance were able to obtain financing within that 90-day period—Momentum

6   would purchase a percentage of the Slate Net Profits and acquire the rights to

7   distribute films in the Dark Castle Slate in certain foreign countries for $30 million.

8   The Slate Net Profits and any profits from distribution of the Dark Castle Slate

9   were dependent on the Slate's performance at the box office.  As a result, the Dark

10  Castle Slate's performance was central to this transaction.  Alliance and

11  Momentum, of course, would not have even entertained the deal if they felt there

12  was a reasonable probability that the Slate Net Profits and profits from those

13  distribution rights would not exceed the contemplated $30 million investment.

14      77.     From the very beginning, the Silver Parties assured Alliance and

15  Momentum that the Dark Castle Slate would perform exceedingly well and that

16  Alliance and Momentum would almost certainly make a profit on its investment

17  and, at a minimum, would break even.  On information and belief, the Silver

18  Parties' representations and assurances were false and misleading and were

19  intended to induce Alliance and Momentum to enter into the Written Agreement.

20  Indeed, on information and belief, the Dark Castle Slate has produced not a cent of

21  Silver Net Profits.  Moreover, on information and belief, based on the releases to

22  date, the Slate would not have resulted in a single profit from distribution in the

23  foreign territories in which Alliance would have had distribution rights.

24      78.     On information and belief, as the Silver Parties intended, Alliance and

25  Momentum spent money and time negotiating the Written Agreement and

26  ultimately entered into the Written Agreement in April 2008.  Had Alliance and

27  Momentum known that the Silver Parties' representations were false and

28

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

1  misleading, they would not have spent that money and time negotiating the Written

2  Agreement.

3                                    **Parties**

4       79.    Alliance is a corporation organized under the laws of Canada, with its

5  head office in Montreal, Quebec.  Alliance is the largest independent distributor of

6  motion pictures in Canada.  Alliance distributes filmed entertainment to theaters, on

7  home video, on DVD, and to television broadcasters.

8       80.    Momentum is a Delaware corporation with its head office in Delaware.

9  Momentum is an affiliate of Alliance.

10      81.    On information and belief, Joel Silver is a citizen of the state of

11 California, residing in Los Angeles County; Silver Pictures Inc. is a California

12 corporation with its principal place of business in Los Angeles, California; and

13 Silver Slate LLC is a Delaware limited liability company of which Silver is the sole

14 member.  Silver Slate also owns 100% of Dark Castle Holdings LLC, a film

15 production company.

16      82.    On information and belief, there exists, and at all times herein

17 mentioned there existed, a unity of interest and ownership between Silver, Silver

18 Pictures, and/or Silver Slate, such that any individuality and separateness between

19 Silver, Silver Pictures, and/or Silver Slate, have ceased, and each is the alter ego of

20 the others.  As such, Counterclaimants allege that adherence to the fiction of a

21 separate existence of Silver, Silver Pictures, and/or Silver Slate as entities distinct

22 from each other would permit an abuse of corporate privilege and would sanction

23 fraud and promote injustice.

24      83.    On information and belief, each of the Silver Parties was authorized

25 and empowered by the others to act, and they did so act, as the agent, principal,

26 partner, or joint venturer of the other, and each of them was at all times acting

27 within the course and scope of such agency, partnership, or joint venture.  On

28 information and belief, each of the Silver Parties acted with the full knowledge,

DEFENDANTS' AMENDED ANSWER TO
                                    FAC AND COUNTERCLAIM

1  approval, and consent of the others.  As such, each of the Silver Parties is
2  responsible for the liabilities of the others.

3                                 **Jurisdiction**

4       84.    This Court has jurisdiction over the counterclaims asserted herein

5  pursuant to 28 U.S.C. §§ 1332 and 1367, as the claims asserted by Alliance and

6  Momentum are so related to claims asserted by Silver, Silver Pictures, and Silver

7  Slate that they form part of the same case or controversy under Article III of the

8  United States Constitution.

9                            **Charging Allegations**

10      85.    In early 2007, CanWest Global Communications Corp. and affiliates

11  of Goldman, Sachs & Co. (GS&Co.) announced that they were purchasing Alliance

12  Atlantis Communications, Inc. ("Alliance Atlantis"), which was one of Canada's

13  largest entertainment companies.  Later that year, Alliance Atlantis was divided up

14  into three independent companies, one of which was Defendant-Counterclaimant

15  Alliance (f/k/a Motion Picture Distribution).  At that time, Alliance was controlled

16  by Edgestone Capital ("Edgestone"), who owned the company jointly with affiliates

17  of GS&Co.  In December 2007, Edgestone sold its stake in Alliance to Société

18  générale de financement du Québec ("SGF"), and SGF took over control of

19  Alliance.

20      86.    On information and belief, by that time, the Silver Parties had already

21  entered into a series of written agreements with other parties, by which the Silver

22  Parties obtained financing for a slate of fifteen films to be produced by Dark Castle

23  Holdings (the "Dark Castle Slate") between 2006 and 2012.  On information and

24  belief, by that time, SGF independently had invested in the Dark Castle Slate.  On

25  information and belief, those written agreements further provided that Silver

26  Pictures would be entitled to 62.5% of the profits remaining after the senior lenders,

27  mezzanine lenders, and equity investors had been repaid and received certain

28  prescribed returns ("Slate Net Profits").

- 14 -    DEFENDANTS' AMENDED ANSWER TO
          FAC AND COUNTERCLAIM

87.   On information and belief, in mid-2007, Silver approached GS Capital Partners VI, L.P. ("GS Capital Partners") about forming a venture to finance, produce and distribute films, television programming and other content. On information and belief, in connection with this contemplated venture, Silver proposed that GS Capital Partners or one of its affiliates would, among other things, invest in the Dark Castle Slate or purchase a percentage of Silver Pictures' rights to the Slate Net Profits. On information and belief, by June 2007, however, the Investment Committee for GS Capital Partners decided that neither it nor any of its affiliates, including GS Direct LLC, would invest in or form a venture with the Silver Parties.

88.   In the summer and fall of 2007, Alliance was attempting to increase its access to film content, including by pursuing opportunities to secure distribution rights on film slates from independent Hollywood producers and executives.

89.   After GS Capital Partners and its affiliates decided not to do a venture with the Silver Parties, the Silver Parties and Alliance engaged in preliminary discussions about doing business together, including preliminary discussions about a deal in which Alliance would purchase a percentage of Silver Pictures' rights to the Slate Net Profits, in addition to negotiating rights to distribute the films in the Dark Castle Slate itself in selected territories, and on certain other terms. In other words, Alliance and the Silver Parties discussed a potential transaction in which Alliance would make an upfront cash payment in exchange for a portion of future profits from the Dark Castle Slate.

90.   Given this structure of the transaction, the Silver Parties knew that Alliance and Momentum would not even entertain the deal unless Alliance and Momentum believed that they would make a profit on their upfront cash payment from their share of the Slate Net Profits from the fifteen films. Therefore, to convince Alliance and Momentum to acquire a percentage of the Slate Net Profits from films that Dark Castle had not yet made, the Silver Parties assured Alliance

DEFENDANTS' AMENDED ANSWER TO FAC AND COUNTERCLAIM

and Momentum that they would recoup their upfront cash payment from the Dark Castle Slate's profits. On information and belief, these representations and assurances were deliberately false and misleading.

91.   In particular, the Silver Parties created a financial model that, on information and belief, deliberately and fraudulently overstated the anticipated performance of the fifteen films in the Dark Castle Slate. Steve Richards, President of Silver Pictures, acting on behalf of each of the Silver Parties, first provided this fraudulent financial model to Charles Layton in March 2007. At that time, Mr. Layton was a consultant to GS Capital Partners, but by September 2007, he was the President of Alliance.

92.   At approximately the same time, the Silver Parties gave their financial model to the Salter Group, an advisory firm that the Silver Parties retained to draft a report that valued the cash flow stream from the Slate Net Profits, which the Silver Parties commissioned to convince potential investors to invest in the Dark Castle Slate or purchase a percentage of the Slate Net Profits. On May 22, 2007, the Salter Group delivered a report (the "Salter Report"), based on the Silver Parties' financial model, that valued the 62.5% interest in the Slate Net Profits at $62.4 to $77.3 million, before taxes. Also on May 22, 2007, Richards (on behalf of the Silver Parties) first caused that report to be delivered to Mr. Layton.

93.   After Mr. Layton became President of Alliance, the Silver Parties continued to tout their model and the Salter Report as a principal reason why Alliance and Momentum should enter into an agreement for, among other things, the purchase of a percentage of the Slate Net Profits. In addition, on information and belief, the Silver Parties knew that Mr. Layton, Alliance and Momentum were relying on their model and the Salter Report in determining whether to enter into the Written Agreement and the transactions contemplated by it. Indeed, from the time the Silver Parties first provided Mr. Layton with their model and the Salter Report until the Written Agreement was executed in April 2008, the Silver Parties

- 16 -

DEFENDANTS' AMENDED ANSWER TO FAC AND COUNTERCLAIM

1   continued to tout their model and the Salter Report as proof positive that Alliance

2   and Momentum would turn a profit by purchasing a percentage of the Slate Net

3   Profits.

4        94.   On information and belief, throughout that time period, the Silver

5   Parties did not believe that the actual value of the Slate Net Profits was as

6   projected, and knew that those projections had no reasonable basis in fact and were

7   based on assumptions that were unrealistic and incorrect. In sum, the Silver Parties

8   knew or should have known that the model they touted, and employed to assure

9   Alliance and Momentum that they would not lose money if they purchased a

10  percentage of the Slate Net Profits, was false and misleading.

11       95.   In fact, on information and belief, the entire Dark Castle Slate has

12  generated *no net profits*, and any interest in the Slate Net Profits has been

13  *worthless*. The films in the Dark Castle Slate that have been released to date have

14  not come close to meeting the projections in the Silver Parties' model and the Salter

15  Report, which the Silver Parties used to assure Alliance and Momentum that they

16  would make money if they purchased a percentage of the Slate Net Profits.

17       96.   In addition, on information and belief, by no later than April 2008, the

18  Silver Parties knew that they would not have sufficient funds to make fifteen (15)

19  films, nor sufficient funds to make even eight (8) quality (i.e., profitable) films for

20  the Dark Castle Slate. Nevertheless, from May 2007 until the Written Agreement

21  was executed in April 2008, the Silver Parties never once informed Mr. Layton or

22  Alliance or Momentum of those facts. Indeed, on information and belief, the Silver

23  Parties actively concealed those facts from Mr. Layton, Alliance and Momentum.

24       97.   In reliance on these false and misleading representations, Alliance and

25  Momentum continued negotiations of what was in fact a valueless transaction

26  through the fall and winter of 2007 and the spring of 2008. Throughout these

27  negotiations, the Silver Parties never corrected the false and misleading projections

28  in their financial model and in the Salter Report. Alliance and Momentum

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

1  negotiated under the belief that they were pursuing a valuable collaboration that

2  would allow them to distribute premium quality content developed by a well-

3  known Hollywood producer.  Had Alliance and Momentum known that the Silver

4  Parties' sole objective was to convert their worthless future profits participation

5  rights into an upfront lump sum payment of tens of millions of dollars, Alliance and

6  Momentum would not have continued with the negotiations.

7      98.    At Silver's repeated urging, Alliance directed its lawyers to negotiate

8  and draft a "non-binding, preliminary proposal ('Term Sheet')" describing the

9  proposed transaction.  In December 2007, Alliance signed the non-binding term

10  sheet after Silver repeatedly asked for papers that he could show to his personal

11  financial advisers, his business manager, and his bank.  Although the Silver Parties

12  have alleged in this case that there was a binding oral agreement between the

13  parties in 2007, the term sheet that Silver requested and that Alliance signed says

14  just the opposite:

15      This Term Sheet is for discussion purposes only; it is not intended to
16  be, and does not constitute, a legally binding agreement of the Parties.
    A legally binding obligation with respect to the transactions
17  contemplated hereby shall only arise pursuant to executed and
    delivered definitive documentation that is reasonably acceptable to the
18  Parties.

19      99.    Between December 2007 and April 2008, Alliance and Momentum

20  continued to incur significant costs to negotiate, draft, and revise detailed written

21  agreements that would, once signed, create a contract between the parties.  In doing

22  so, Alliance and Momentum continued to rely on the financial projections that the

23  Silver Parties provided in the spring of 2007, and which were never corrected.

24      100.   Alliance and Momentum incurred significant costs, including legal

25  costs, as a direct result of the Silver Parties' misrepresentations.

26      101.   On April 18, 2008, Alliance, Momentum, and the Silver Parties signed

27  a series of written contracts (i.e., the Written Agreement) in which Momentum

28  agreed, subject to the approval of the Alliance board of directors and subject to

    DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

1  financing being obtained within 90 days, to pay $30 million for a 35.57% interest in

2  the future Slate Net Profits.

3      102.   The 90-day financing window occurred during the extraordinary,

4  global economic crisis that struck during the summer of 2008. Despite making

5  commercially reasonable efforts, Alliance was unable to obtain the necessary

6  financing, and the Written Agreements terminated.

7      103.   Having failed to defraud Alliance of the $30 million purchase price for

8  the Slate Net Profits, in the summer of 2008, the Silver Parties aggressively

9  pressured Alliance to pay Silver $2 million, in return for supposed efforts that

10  Silver claimed he had made to encourage SGF to invest in Alliance in 2007.

11  Exhausted by the Silver Parties' repeated pressure tactics and threats, individual

12  members of the Alliance board and of Alliance's management team agreed to ask

13  SGF—who controlled Alliance's board and had independently invested in the Dark

14  Castle Slate before Silver approached Alliance—to approve a payment by Alliance

15  of the $2 million fee that Silver requested. In fact, none of the Silver Parties had

16  done anything to support or encourage SGF's investment in Alliance, and SGF

17  refused to pay Silver for services he had never performed.

18  <center>**Count 1 – Fraud**</center>

19      104.   Alliance and Momentum repeat and re-allege each of the foregoing

20  paragraphs as though set forth in their entirety herein.

21      105.   The Silver Parties' projections of the financial performance of the

22  Dark Castle Slate and the Slate Net Profits, both in the financial model and in the

23  Salter Report that relied on the financial model, were false. The Silver Parties

24  knew they were false when they made those projections.

25      106.   The Silver Parties did not believe at the time that the actual value of

26  the Slate Net Profits was as projected, knew that those projections had no

27  reasonable basis in fact, and knew that those projections were based on assumptions

28  that were incorrect.

<center>- 19 -</center>

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

107.   The projections were the only basis on which Alliance or Momentum could value what exactly Alliance and Momentum would receive for their $30 million, and consequently were material to the transaction.

108.   In addition, by no later than April 18, 2008, the Silver Parties knew that they would not have sufficient funds to make even eight (8) quality (i.e., profitable) films for the Dark Castle Slate.  Nevertheless, the Silver Parties never informed Alliance or Momentum of that fact and actively concealed that fact.

109.   Alliance and Momentum reasonably relied on these material representations and projections provided directly by the Silver Parties and indirectly through the Salter Group.

110.   As a proximate result of the Silver Parties' material misrepresentations, Alliance and Momentum incurred significant costs that otherwise would have been avoided.

111.   In doing the acts herein alleged, the Silver Parties acted with oppression, fraud, and malice, and Counterclaimants are entitled to punitive damages.

**Count 2 – Negligent Misrepresentation**

112.   Alliance and Momentum repeat and re-allege each of the foregoing paragraphs as though set forth in their entirety herein.

113.   The Silver Parties' projections of the financial performance of the Dark Castle Slate and the Slate Net Profits, both in the financial model and in the Salter Report that relied on the financial model, were false.  The Silver Parties should have known they were false when they made those projections.

114.   The Silver Parties should have known that those projections had no reasonable basis in fact, and should have known that those projections were based on assumptions that were incorrect.

115.   The projections were the only basis on which Alliance or Momentum could value what exactly Alliance and Momentum would receive for their $30

DEFENDANTS' AMENDED ANSWER TO FAC AND COUNTERCLAIM

1   million, and consequently were material to the transaction.

2        116.   In addition, by no later than April 18, 2008, the Silver Parties should

3   have known that they would not have sufficient funds to make even eight (8)

4   quality (i.e., profitable) films for the Dark Castle Slate.  Nevertheless, the Silver

5   Parties never informed Alliance or Momentum of that fact.

6        117.   Alliance and Momentum reasonably relied on these material

7   representations and projections provided directly by the Silver Parties and indirectly

8   through the Salter Group.

9        118.   As a proximate result of the Silver Parties' material

10   misrepresentations, Alliance and Momentum incurred significant costs that

11   otherwise would have been avoided.

12   ///

13   ///

14   ///

DEFENDANTS' AMENDED ANSWER TO
FAC AND COUNTERCLAIM

<u>Prayer for Relief</u>

WHEREFORE, Defendants request that judgment be entered against Plaintiffs and in favor of Defendants on each and every one of Plaintiffs' claims and costs be awarded to Defendants. Counterclaimants Alliance and Momentum further pray that the Court enter judgment in their favor on the counterclaims, and award them

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Rescission of the Written Agreement;

    d.    Attorneys fees and costs; and

    e.    Such other and further relief that the court deems appropriate.

Respectfully submitted,

DATED:  July 19, 2011

BOIES, SCHILLER & FLEXNER LLP

By _____
    Fred Norton

Attorneys for Defendants The Goldman Sachs Group, Inc., Alliance Films, Inc. and Momentum Pictures USA, Inc.

- 22 -

DEFENDANTS' AMENDED ANSWER TO FAC AND COUNTERCLAIM