BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller *(pro hac vice)*
jschiller@bsfllp.com
575 Lexington Ave., 7th Floor
New York, NY 10022
Telephone: 212.446.2300
Facsimile: 212.446.2350

Fred Norton (SBN 224725)
fnorton@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA 94612
Telephone: 510.874.1000
Facsimile: 510.874.1460

David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401
Telephone: 310.395.5800
Facsimile: 510.874.1460

Attorneys for Defendant *The Goldman Sachs Group, Inc.* and Defendant-Counterclaimants *Alliance Films Inc. and Momentum Pictures USA, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL SILVER, an individual, SILVER PICTURES, INC., and SILVER SLATE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP, INC., ALLIANCE FILMS INC., and MOMENTUM PICTURES USA, INC.,<br><br>Defendants.<br><br>ALLIANCE FILMS INC., and MOMENTUM PICTURES USA, INC.,<br><br>Counterclaimants,<br><br>v.<br><br>JOEL SILVER, an individual, SILVER PICTURES, INC., and SILVER SLATE, LLC,<br><br>Counterclaim-Defendants. | Case No. CV 10-4961 RSWL (AJWx)<br><br>JOINT RULE 26(f) REPORT<br><br>Scheduling Conference Set For:<br><br>Date: September 27, 2011<br>Time: 10:00 a.m.<br><br>[Complaint Filed May 17, 2010] |

JOINT Rule 26(f) REPORT

79086-10195/1794933.2

TO THE COURT:

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Local Rule 26-1, and the Court's Order Setting Scheduling Conference, the counsel for Plaintiff-Counterclaim Defendants Joel Silver, Silver Pictures, Inc., and Silver Slate, LLC ("Silver Parties") and Defendant The Goldman Sachs Group, Inc. ("GS Group") and Defendant-Counterclaimants Alliance Films Inc. ("Alliance") and Momentum Pictures USA, Inc. ("Momentum") met and conferred on **September 6, 2011**. The parties now submit this Joint Rule 26(f) Report, which addresses each of the issues set forth in Rule 26 and Local Rule 26-1.

## I. Statement of the Case

### A. Plaintiff-Counterclaim Defendants' Statement

The Court is, of course, already well aware of the nature of this case. The First Amended Complaint ("FAC") charts out the facts in considerable detail, and the Court read and considered lengthy legal briefs from both sides relating to Defendants' Motion To Dismiss, which the Court previously denied in a Written Order. Accordingly, the Silver Parties' Statement of Case will only briefly outline some pertinent facts and issues.

a. <u>Statement of Claims</u>. The case primarily involves several oral agreements and the Written Agreement entered into during 2007 and 2008. The two primary defendants are GS Group and Alliance. The third defendant, Momentum, a minor player in the events in dispute, is owned, controlled and operated by Alliance and/or GS Group. Plaintiffs are Joel Silver, a well known Hollywood film producer, and two of his production companies.

Aside from a general "disbelief" that oral contracts could be real or binding, GS Group presents itself almost as an innocent bystander to the events at issue. But, in reality, GS Group was heavily involved in the relationship with the Silver Parties. Many significant oral and written communications were with high ranking principals in GS Group. Indeed, GS Group and the Silver Parties initially

- 1 -     JOINT RULE 26(f) REPORT

negotiated a deal in 2007 under which the Silver Parties would transfer substantial assets in exchange for a cash payment from GS Group of $35 million. This agreement is referred to in the FAC as the "Silver Deal".

When GS Group's deal to buy Alliance (which GS Group designated to complete the Silver Deal on its behalf) was in jeopardy, at GS Group's request, Silver provided a valuable benefit to GS Group by introducing a Canadian entity named Société générale de financement du Québec Bureau ("SGF") for purposes of financing the Alliance purchase. Ultimately, SGF provided a cash investment of $100 million to GS Group for Alliance.
GS Group promised the Silver Parties that if SGF invested, GS Group would complete the asset purchase deal (through Alliance) and pay Silver $35 million. This agreement is referred to and described in the FAC as the "Performance Agreement".

But when GS Group refused to perform (even after having received the benefit of the $100 million investment from SGF), the Silver Parties did not enforce their rights based on and in exchange for GS Group's promise to do two things — use commercially reasonable efforts to arrange for the necessary funds (which had been reduced to $30 million) to pay the Silver Parties, and, if the Silver Parties did not receive the $30 million payment, to pay "reasonable compensation" for Silver's valuable introduction and assistance regarding the $100 million investment received from SGF. This agreement is referred to and more specifically described in the FAC as the "Forbearance Agreement." Ultimately, the parties agreed on $2 million as the amount payable should the $30 million deal and payment not be completed, which is referred to and described in the FAC as the "Fee Agreement".

However, GS Group failed to perform these promises as well, by failing to exercise commercially reasonable efforts to arrange for the $30 million payment and then refusing even to pay Silver the $2 million sum negotiated by the parties for the valuable introduction of and assistance regarding financing from SGF.

- 2 -   JOINT RULE 26(f) REPORT

79086-10195/1794933.2

In view of the Forbearance Agreement, the Silver Parties proceeded to enter a series of separate written agreements with GS Group's subsidiaries, Alliance and Momentum, all dated as of April 18, 2008 (collectively referred to in the FAC as the "Written Agreement"), providing, in substance, for payment of the $30 million in exchange for assignment of the assets owed by certain of the Silver Parties. Under the Written Agreement Alliance was obligated and promised to use commercially reasonable efforts to arrange for the necessary funds to make the $30 million payment to the Silver Parties, an obligation which Alliance also failed to perform.

Instead of using commercially reasonable efforts to arrange for the necessary funds for payment of $30 million to the Silver Parties, the GS Group and Alliance used funds available to them to pursue and finance other business opportunities for their own benefit and advantage and for the benefit of others. Indeed, GS Group was able to make profits in the billions and to pay its own executives bonuses in the billions during 2008, while claiming in 2008 that it could not arrange for the $30 million payment owed to the Silver Parties.

The failure of Alliance and GS Group to exercise commercially reasonable efforts to arrange the funds necessary for the payment of the $30 million materially breached the obligations each party owed to Plaintiffs. That breach together with the refusal even to pay Silver the $2 million owed pursuant to the Fee Agreement prompted this lawsuit. The Silver Parties had, in layman terms, been duped.

GS Group argues at length that it is "implausible" and "absurd" to think that the Silver Parties and GS Group entered into these agreements at all. But, to the contrary, each of the oral agreements alleged with GS Group is entirely realistic, plausible and believable. At the outset, it is certainly plausible that GS Group agreed to pay the Silver Parties $35 million in exchange for the assignment of the valuable rights as set forth in the FAC. Then, when the Silver Deal stalled because of GS Group's problems raising financing for its purchase of Alliance, the fact that

GS Group sought out and utilized Silver's help and assistance to find the necessary financing is entirely plausible.

And, when Silver introduced SGF (with which Silver had a prior business relationship) and when SGF provided at least $100 million in financing for the purchase of Alliance, it is certainly logical and makes perfect sense that GS Group promised to perform and make payment of the $35 million to the Silver Parties (through its designee Alliance or otherwise) in exchange for Silver's efforts.

Then, after GS Group secured the $100 million investment commitment from SGF, the refusal by GS Group to perform and make payment of $35 million to the Silver Parties, while outlandish, is certainly believable.

After these events, the Silver Parties decided against exercising rights against GS Group in exchange for the GS Group promise (i) to use commercially reasonable efforts to arrange the funds necessary to make a $30 million payment (reduced from $35 million) to the Silver Parties and (ii) to reasonably compensate Silver for the valuable introduction of SGF, even if the Silver Parties did not receive $30 million.

Of course, these oral agreements with GS Group existed independent from the Written Agreement, and in the end, the failure of GS Group and the other defendants to perform their obligations compelled Plaintiffs' lawsuit which depicts an entirely plausible (and, indeed, highly believable) scenario in the world of Hollywood and high finance.

Finally, as alleged in the FAC, Defendants made several material promises to the Silver Parties in connection with the various agreements when they knew (or should have known) that the promises were false when made. The specifics of such false promises and representations are set forth in the FAC which alleges claims for promissory fraud and negligent misrepresentation against GS Group and Alliance.

b. <u>Relief Requested</u>. Accordingly, Plaintiffs' lawsuit seeks damages as proven at trial but no less than $30 million plus punitive damages for Defendants'

- 4 -   JOINT RULE 26(f) REPORT

fraudulent conduct. If $30 million or more is not awarded, the Silver Parties are entitled to (i) at least $5 million based on a quantum meriut claim for the valuable introduction of SGF and assistance regarding SGF's $100 million investment or (ii) $2 million pursuant to the Fee Agreement. Interest at the highest legal rate should be awarded on all of the Silver Parties claims.

      c.    <u>Counterclaims</u>. Alliance and Momentum have filed Counterclaims against the Silver Parties, seeking attorney fees and other so-called "reliance" damages as a result of allegedly false and fraudulent representations made by the Silver Parties. In essence, Defendant Counterclaimants allege that the Silver Parties created "deliberately false and misleading" financial models and a valuation report from the Salter Group (an independent and well known investment banking company specializing in valuations).

Aside from the sheer offensiveness of this fraud claim and the obvious attempt to intimidate the Silver Parties to abandon their lawsuit, the "fraud" alleged is nearly impossible to fathom. It is inconceivable that GS Group — one of the world's foremost investment banks, with vast resources and an array of financial analysts and experts in its employ and at its disposal — or any of its subsidiaries or affiliates failed to engage in any independent analysis or to verify any and all aspects of a potential transaction with the Silver Parties. The Counterclaimants simply could not have reasonably relied simply on any "assumptions," "models," "projections" or "estimates" of any kind provided by the Silver Parties without their own due diligence, investigation, and analysis in evaluating and determining whether to enter into the Written Agreement.

Accordingly, the Silver Parties adamantly maintain that no such fraud occurred, and, that, among other things, Counterclaimants did not reasonably rely on any statements, representations, or materials by or from the Silver Parties. No actions by the Silver Parties caused any recognizable damages of any kind to Counterclaimants.

- 5 -    JOINT RULE 26(f) REPORT

### B. Defendant GS Group and Defendant-Counterclaimants Alliance and Momentum's Statement

#### 1. Background

Defendant-Counterclaimant Alliance is the largest independent distributor of films in Canada. It is a Canadian corporation controlled by Société générale de financement ("SGF"), and jointly owned by SGF and certain investment funds managed by an affiliate of Defendant GS Group. Defendant-Counterclaimant Momentum is a Delaware corporation and affiliate of Alliance. Plaintiff-Counterclaim Defendants Joel Silver and the other Silver Parties are producers of motion pictures and television content. All are highly sophisticated commercial parties, and have been represented by eminently capable counsel at all times.

Between late-summer 2007 and spring 2008, the Silver Parties and Alliance conducted negotiations concerning a proposed deal in which Alliance would purchase (i) a percentage of the net profits from a slate of fifteen films to be produced by Dark Castle Holdings, an affiliate of Silver Pictures (the "Slate Net Profits"), (ii) rights to distribute those films in selected territories, and (iii) certain other rights. The potential transaction being discussed at that time contemplated that either Alliance or Momentum would make an upfront payment of $30 million for those assets. The Silver Parties assured Alliance and Momentum that they would recoup their upfront cash payment from the Slate Net Profits.

In fact, those assurances were deliberately false and misleading. For example, in March 2007, the Silver Parties provided Alliance's future President, Charles Layton, with a financial model that intentionally overstated the anticipated performance of the slate of fifteen films (the "Slate") and the value of the Slate Net Profits. The Silver Parties also commissioned a report from the Salter Group (the "Salter Report") based on that misleading financial model.

At that time (and certainly by April 2008), the Silver Parties knew that those valuations had no reasonable basis in fact and were based on unreasonable and

- 6 -    JOINT RULE 26(f) REPORT

79086-10195/1794933.2

incorrect assumptions. In fact, the Slate has generated *no net profits*, and any interest in the Slate Net Profits has been *worthless*. Moreover, by no later than April 2008, the Silver Parties also knew that they would not have sufficient funds to make fifteen quality (i.e., profitable) films, let alone even eight quality films, for the Slate. Nevertheless, the Silver Parties never informed Alliance or Momentum of this significant fact. In reliance on the Silver Parties' false and misleading assurances, Alliance and Momentum continued negotiations of what was in fact a valueless transaction through the fall and winter of 2007 and the spring of 2008. As a result, Alliance and Momentum incurred significant, unnecessary costs and thus were injured.

On April 18, 2008, Alliance, Momentum, and the Silver Parties signed a series of written contracts (i.e., the Written Agreement) in which Momentum and Alliance agreed to pay $30 million for a 35.57% interest in the Slate Net Profits and other rights, subject to (1) the approval of Alliance's board by May 10, 2008, (2) the Silver Parties obtaining consents and approvals from Warner Brothers Pictures, Inc. and other third parties by May 10, 2008, and (3) Alliance obtaining financing within 90 days, to make the $30 million payment. If any of these three contingencies were not met, then the parties would not have any further obligations under the Written Agreement and the Written Agreement would immediately and automatically terminate. The 90-day financing period occurred just as the extraordinary global financial crisis occurred. Despite making commercially reasonable efforts—including identifying, approaching and negotiating with potential investors—Alliance was unable to obtain the necessary financing, and the Written Agreement terminated by its own terms.

Unable to secure $30 million from Alliance and Momentum through their fraudulent scheme, in the summer of 2008, the Silver Parties pressured Alliance to pay Silver $2 million and said, at times, that the payment would be in return for supposed efforts that Silver claimed he had previously made to encourage SGF to

- 7 -     JOINT RULE 26(f) REPORT

79086-10195/1794933.2

invest in Alliance in 2007. In response, members of Alliance's management team and board agreed to ask SGF—which controlled Alliance's board and had independently invested in the Slate—to approve the $2 million payment that Silver requested. However, SGF confirmed that none of the Silver Parties had done anything to support or encourage SGF's investment in Alliance. It therefore refused to permit Alliance to pay Silver for services he never performed.

### 2. The Silver Parties' Claims

More than two years after the Written Agreement automatically terminated, the Silver Parties initiated this action. Their claims are based on three allegations: first, that Alliance and Momentum breached the Written Agreement because Alliance allegedly failed to use commercially reasonable efforts to obtain financing for Momentum and Alliance to purchase a percentage of the Slate Net Profits and other rights; second, that GS Group breached a supposed oral contract by allegedly failing to use commercially reasonable efforts to obtain the same financing; and third, that GS Group and Alliance breached an alleged oral contract made in 2008 to pay Silver $2 million for supposedly providing significant services to facilitate SGF's investment in Alliance in 2007.

The Silver Parties' allegations are baseless. First, as they admit in the FAC, Alliance made efforts to obtain financing. These efforts were substantial and commercially reasonable. Alliance and Momentum thus did everything required of them under the Written Agreement. Second, GS Group did not enter into any agreement, oral or otherwise, with the Silver Parties. Indeed, as set forth in Defendants' Amended Answer, GS Group is not even a proper party to this lawsuit. Third, Alliance and GS Group did not (and as a matter of law could not) enter into an oral agreement with the Silver Parties in 2008 to pay them $2 million for services supposedly rendered back in 2007. In any event, none of the Silver Parties ever performed any such services. The Silver Parties' claims also are subject to numerous affirmative defenses, which are set forth in Defendants' Amended

- 8 -     JOINT RULE 26(f) REPORT

Answer.

### 3. Alliance and Momentum's Counterclaims

Alliance and Momentum—not the Silver Parties—have been harmed here because the Silver Parties made fraudulent and negligent misrepresentations, upon which Alliance and Momentum relied to their detriment. As detailed above and in Alliance and Momentum's Counterclaim (Docket No. 50), the Silver Parties engaged in a fraudulent scheme to induce Alliance and Momentum to purchase the Slate Net Profits by, among other things, knowingly making false and misleading representations about the value of the Slate. Simply put, the Silver Parties repeatedly assured Alliance and Momentum that a participation in the Slate Net Profits had substantial value when, in fact, they knew or should have know that it was worthless. In reliance on the Silver Parties' misrepresentations, Alliance and Momentum incurred substantial costs negotiating, drafting and refining the detailed Written Agreement.

Alliance and Momentum therefore have asserted counterclaims for fraud and negligent misrepresentation. They are entitled to, among other things, compensatory and punitive damages, rescission of the Written Agreement, and attorneys' fees and costs.

## II. Manual for Complex Litigation

This matter is not sufficiently complex to require the procedures of the manual for complex litigation.

## III. Discovery Plan

### A. Subjects On Which Discovery May Be Needed

#### 1. Plaintiff-Counterclaim Defendants The Silver Parties

For Plaintiff - Counterclaim Defendants Silver Parties, written discovery, document production and deposition discovery may be needed concerning at least the following topics, among others:

    a. The negotiation and interpretation of, and all facts and

- 9 -  JOINT RULE 26(f) REPORT

circumstances surrounding, each of the oral and written agreements alleged in the Complaint, including, without limitation, the Silver Deal, the Performance Agreement, the Forebearance Agreement, the Written Agreement and the Fee Agreement.

   b. The facts, circumstances, and events surrounding the acquisition and capitalization of, and financing for, the Alliance transaction by GS Group, or any of its related and affiliated companies.

   c. The facts, circumstances, and events surrounding the introduction of Société générale de financement du Québec Bureau ("SGF") to GS Group and all business and legal dealings and relationships between GS Group and SGF in respect of the Alliance Transaction, including any investment in Alliance by SGF.

   d. All promises and statements made by GS Group and Alliance regarding compensation of any kind to the Silver Parties in regard to the introduction of SGF by the Silver Parties in connection with the Alliance Transaction, and SGF's investment.

   e. All actions and efforts of any kind undertaken by GS Group, Alliance, and Momentum (and any of their related, affiliated and subsidiary companies), if any, to arrange for the funds necessary to make payment to the Silver Parties of $30 million as provided in the Written Agreement and certain other agreements (as alleged in the FAC) between the parties.

   f. The financial condition (including all available funds and cash equivalents) of GS Group, Alliance, and Momentum during the relevant period when they allegedly sought to arrange for funds necessary to pay the Silver Parties $30 million.

   g. All alternative investment activities and decisions of Defendants with respect to utilizing any funds (or cash equivalents) available to GS Group, Alliance, and Momentum (or any of their related and affiliated companies) during

the relevant period when allegedly seeking to arrange for funds necessary to pay $30 million to the Silver Parties.

      h.    All aspects of the relationship between and among GS Group, Alliance and Momentum, and any relationship between and among such entities and other Goldman related and affiliated entities which may be involved in the events and transactions alleged in the FAC, such as Goldman Sachs & Co. and Goldman Sachs Capital Partners.

      i.    The allegations set forth in the Counterclaim filed by Alliance and Momentum, and the fraud and negligent misrepresentation causes of action thereof, including, among other things, the alleged representations and the Counterclaimants' alleged reliance and damages.

      j.    The value of the Silver Parties' introduction and efforts regarding SGF's $100 million investment in Alliance.

      k.    Each of the affirmative defenses set forth in Defendants' Amended Answer and Counterclaim.

      l.    Any other material allegations in the Counterclaim against the Silver Parties.

      m.    Any other material allegations in the Silver Parties' First Amended Complaint.

**2.    Defendant GS Group and Defendant-Counterclaimants Alliance and Momentum**

For Defendant GS Group and Defendant-Counterclaimants Alliance and Momentum, written discovery and deposition discovery may be needed concerning the following:

    a) the Silver Parties' statements to Alliance and Momentum and others concerning the financial performance and valuation of the Slate and the Slate Net Profits;

    b) the Silver Parties' internal statements and projections concerning the

- 11 -    JOINT RULE 26(f) REPORT

financial performance and valuation of the Slate and the Slate Net Profits;

    c) the projected and actual value of the Slate and the Slate Net Profits, including the Salter Group's report;

    d) the actual financial performance of the Slate;

    e) the facts actually known to the Silver Parties concerning the actual and anticipated performance and value of the Slate at the time of their statements to Alliance and Momentum, including the Silver Parties' ability or inability to perform as promised;

    f) the negotiation and drafting of the Written Agreement, and communications between and among the parties concerning that contract;

    g) the Silver Parties' performance, or non-performance, of the Written Agreement;

    h) the Silver Parties' finances during the relevant period, including any tax, accounting or financial problems that would demonstrate a motive for fraud or could have been expected to affect the Silver Parties' ability to deliver a profitable film slate;

    i) potential and actual investors in and lenders for the Slate, including the Silver Parties' business dealings and communications with them;

    j) the Silver Parties' business practices and dealings related to the funding, production, and distribution of film slates;

    k) the Silver Parties' relationship and dealings with Warner Brothers Pictures, Inc. and Warner Brothers Entertainment, Inc., and persons and entities affiliated with them;

    l) the alleged circumstances purportedly giving rise to the oral agreements asserted in the First Amended Complaint, including the alleged discussions, writings concerning those discussions, parties to those discussions, the alleged terms of the oral agreements, and the performance or non-performance of those terms;

79086-10195/1794933.2

m) the Silver Parties' alleged performance of services in connection with SGF's investment in Alliance, the alleged promise to compensate the Silver Parties for those supposed services, and GS Group and Alliance's alleged unjust enrichment from those purported services;

n) the allegations set forth in the Silver Parties' promissory fraud and negligent misrepresentation causes of action, including, among other things, the alleged representations and the Silver Parties' alleged reliance;

o) the Silver Parties' purported damages and their efforts, if any, to mitigate their claimed damages;

p) each of the affirmative defenses set forth in Defendants' Amended Answer;

q) the impact of the global financial crisis on Alliance's ability to obtain financing;

r) any other material allegations in the Silver Parties' First Amended Complaint; and

s) any other material allegations in Momentum and Alliance's Counterclaim against the Silver Parties.

**B.     Discovery Timing**

The parties have some disagreement and hence different proposals regarding discovery timing and trial dates, as set forth below:

1.     <u>Initial Disclosures</u>:  Pursuant to Federal Rule of Civil Procedure 26(a)(1)(C), the parties will make their initial disclosures on or before September 27, 2011.

   a.     <u>Fact Discovery</u>:  The parties both propose a deadline of July 20, 2012, for fact discovery.

2.     <u>Expert Disclosures</u>:  The parties have different proposals regarding the sequence for Rule 26(a)(2) expert witness disclosures and reports:

   a.     Proposal of Plaintiff Silver Parties: Each party shall serve its

- 13 -     JOINT RULE 26(f) REPORT

79086-10195/1794933.2

26(a)(2) expert witness disclosures and reports on the issues for which that party has the burden of proof by July 1, 2012; rebuttal expert disclosures and additional expert disclosures on issues for which a party does not have the burden of proof shall be served by August 1, 2012.  The Silver Parties  propose an expert discovery cut-off of August 15, 2012.

          b.      Proposal of GS Group, Alliance and Momentum:  Each party shall serve its 26(a)(2) expert witness disclosures and reports on the issues for which that party has the burden of proof by August 16, 2012; rebuttal expert disclosures and additional expert disclosures on issues for which a party does not have the burden of proof  shall be served by September 24, 2012.  Defendants propose an expert discovery cut-off of October 5, 2012.

    3.    <u>Other Changes</u>:  At this time, the parties do not propose any other changes to the timing, form or requirements for disclosure under Rule 26(a).

    4.    <u>Other Relevant Discovery Dates</u>:  The respective discovery and trial dates proposed and suggested by each of the Silver Parties and Defendants are listed in the attached Exhibit A.

    **C.**    **Discovery of Electronically Stored Information**

The parties are continuing to discuss the format in which electronically stored information shall be produced and hope to reach an agreement, without involving the Court.

    **D.**    **Claims of Privilege and Attorney Work Product**

GS Group, Momentum and Alliance have proposed that for document production purposes, each producing party will have 90 days from the date of each production to produce a privilege log.  The Silver Parties have proposed that each party will have 60 days from the date of each production to produce a privilege log.  The parties are continuing to discuss this issue and hope to reach an agreement, without involving the Court.

    The parties stipulate out of the privilege-log requirements of *Burlington*

- 14 -    JOINT RULE 26(f) REPORT

79086-10195/1794933.2

*Northern & Santa Fe Ry. Co. v. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) and instead agree that:

- Privilege logs produced in accordance with the timeframe agreed upon by the parties, if such an agreement is reached, are enough to preserve privilege;
- Privilege logs shall state, to the extent that it can be ascertained, (1) an identifying number or designation (2) the length of the document; (3) the date of the document, (4) the title of the document, (5) the author(s) of the document, (6) all recipients of the document (including blind copied recipients), and (7) the nature of the privilege asserted. Each Party shall furnish, with the privilege log, a list of all persons identified on the log who were not employees of that Party at the time of the relevant communication, with a brief description of that person's relevant role (e.g., outside counsel, staff of outside counsel, etc.) sufficient to justify the assertion of privilege as to that person.

Communications with counsel after this lawsuit was filed need not be logged or disclosed.

### E. Changes to Limitations On Discovery

At this time, the parties do not request, and do not anticipated requesting in the future, any changes in the limitations on discovery imposed under the Federal Rules of Civil Procedure or under the Local Rules.

### F. Other Orders That This Court Should Issue Under Rule 26(c) or Under Rule 16(b) and (c)

Discovery in this case may involve the production of confidential, competitively sensitive, and/or proprietary information. The parties will file a stipulation and proposed protective order regarding confidential materials to protect the confidentiality of those materials. At this time, the parties propose no other orders under Rule 26(c) or Rule 16(b) and (c).

///

///

79086-10195/1794933.2

Case 2:10-cv-04961-RSWL-AJW   Document 57   Filed 09/20/11   Page 17 of 19   Page ID
 #:1223

IV. **Dispositive Motions**

<u>Plaintiff-Counterclaim Defendants</u>.  The Silver Parties anticipate moving for summary judgment on certain of their claims and the claims made by GS Group, Alliance, and Momentum.

<u>Defendant and Defendant-Counterclaimants</u>.  GS Group, Alliance and Momentum anticipate moving for summary judgment on all of the Silver Parties' claims.  Alliance and Momentum anticipate that they may move for summary judgment of their counterclaims.

The parties propose different deadlines for filing dispositive motions:  the Silver Parties propose August 29, 2012, and GS Group, Alliance, and Momentum propose October 29, 2012.

V. **Settlement**

The parties most recently engaged in settlement discussions shortly before the Silver Parties filed this action.  There are no further settlement discussions and none are currently scheduled.  Per Local Rule 16-15, should the case not otherwise settle the parties select Settlement Procedure No. 3 (stating that the parties shall participate in a non-judicial dispute resolution proceeding).

VI. **Trial Estimate/Date**

The Silver Parties currently estimate that it will take approximately 8-10 trial days to try the matter, including issues of the FAC and the Counterclaims and that they will call 7-10 witnesses at trial, including experts. The Silver Parties suggest and propose a trial date of November 8, 2012 (or thereabouts in early November, 2012).  GS Group, Alliance, and Momentum currently estimate that the time for trial is approximately 6 trial days and estimate that they will call between 4 to 7 witnesses at trial, including experts.  Defendants propose a trial date on or around February 18, 2013.

VII. **Additional Parties**

The Silver Parties fully believe that GS Group is the proper defendant in the

- 16 -    JOINT RULE 26(f) REPORT

79086-10195/1794933.2

action, but GS Group has denied that GS Group is a proper defendant. Accordingly, as a precautionary measure, the Silver Parties may move the Court to name and join as defendants other Goldman related entities which have been identified in certain pleadings by GS Group (such as Goldman Sachs Co. and Goldman Sachs Capital Partners). The Silver Parties assert that GS Group has indicated in pleadings that such other Goldman entities may have some relationship to the transactions at issue as alleged in the FAC.

Defendant GS Group and Defendant-Counterclaimants Alliance and Momentum do not anticipate joining any additional parties. GS Group, Alliance and Momentum state that the Silver Parties' assertion that "GS Group has indicated in pleadings that such other Goldman entities may have some relationship to the transactions at issue as alleged in the FAC" is incorrect.

## VIII. Other Issues

The parties currently do not anticipate any other issues affecting the status or management of this case.

Respectfully submitted,

DATED: September 20, 2011

By _Robert F. Marshall_ (signature)
ROBERT F. MARSHALL

Attorneys for Plaintiff-Counterclaim Defendants

DATED: September 20, 2011        BOIES, SCHILLER & FLEXNER LLP

By /s/Fred Norton
Fred Norton

Attorneys for Defendant The Goldman Sachs Group, Inc. and Defendant Counterclaimants Alliance Films Inc. and Momentum Pictures USA, Inc.

- 17 -        JOINT RULE 26(f) REPORT

79086-10195/1794933.2

## SCHEDULE A OF PROPOSED DATES

| Descriptions | GS Group, Alliance And Momentum's Proposed Dates | The Silver Parties' Proposed Dates |
|---|---|---|
| Fact Discovery Cut-Off | July 20, 2012 | July 20, 2012 |
| Opening Expert Disclosures Due | August 16, 2012 | July 1, 2012 |
| Expert Rebuttal Disclosures Due | September 24, 2012 | August 1, 2012 |
| Expert Discovery Cut-Off | October 5, 2012 | August 15, 2012 |
| Deadline for filing dispositive motions | October 29, 2012 | August 29, 2012 |
| Trial | On or around February 18, 2013 (estimated 4-7 trial days) | November 8, 2012 (or thereabouts in early November) (estimated 8-10 trial days) |